2025 IL App (1st) 242563-U

No. 1-24-2563B

Order filed March 26, 2025

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CR 12315 |
| | ) | |
| OLLIE BAILEY, | ) | Honorable |
| | ) | Kenneth J. Wadas, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE LAMPKIN delivered the judgment of the court.
Justices Reyes and D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The judgment of the trial court granting the State's petition for pretrial detention and subsequently denying defendant's Rule 604(h) motion for relief is affirmed.

¶ 2    Defendant Ollie Bailey was charged with four counts of aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6(a)(1) (West 2022)). After satisfying a $5,000-D bond amount, defendant failed to appear multiple times and the trial court issued a "no bail" warrant for his arrest. Defendant was subsequently arrested and charged with residential burglary and attempt

residential burglary under case number 24 CR 0740201. The State did not seek defendant's detention on the new case and defendant was ordered released with pretrial conditions on July 7, 2024. However, the following day, the trial court executed defendant's arrest warrant in the instant case and ordered that defendant remain detained. Defendant remained in custody until December 9, 2024, when he petitioned for his pretrial release, and the State petitioned for defendant's pretrial detention. The trial court granted the State's petition for pretrial detention and denied defendant's petition for release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)). Defendant filed a motion for relief pursuant to Supreme Court Rule 604(h), which the trial court also denied. Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024).

¶ 3     Defendant now appeals, arguing that the State failed to meet its burden of proof to justify defendant's pretrial detention, that the trial court failed to adequately explain why less restrictive conditions other than detention would not suffice, and that the trial court erred by ordering defendant to have no contact with the victim in the residential burglary case.

¶ 4     For the reasons that follow, we affirm the judgment of the trial court.

¶ 5                                I. BACKGROUND

¶ 6     Defendant was arrested and charged with AUUW on September 10, 2022. On September 11, 2022, the trial court imposed a $5000-D bond, which defendant's mother posted to precipitate his release. Defendant appeared at multiple court dates, but failed to appear in court on May 30, 2023, at which time the trial court issued a "no bail" warrant for defendant's arrest. On June 30, 2023, the trial court entered a judgment forfeiting defendant's bond.

¶ 7     Defendant remained at large until he was arrested on July 5, 2024, and charged with residential burglary and attempt residential burglary under case number 24 CR 0740201.

Defendant appeared before a different trial court judge than the one presiding over his AUUW case on July 7, 2024. The State did not seek to detain defendant on this new case, but the trial court heard proffers in order to determine the conditions of release.

¶ 8    The State proffered that the victim and defendant lived in the same building. Around 2:55 p.m. on July 5, 2024, the victim was walking down the hallway of his building when he observed defendant opening the door to the victim's apartment with a key. When the victim confronted defendant, defendant punched him and ran away. The victim gave chase and managed to flag down some police who apprehended defendant. The victim's apartment had been burglarized several days earlier on July 2, 2024, and defendant was wearing shoes that were previously taken from the victim's apartment. A search of defendant also yielded the victim's debit card and house keys belonging to the victim. The trial court imposed a curfew on defendant, requiring him to be indoors between 7 p.m. and 7 a.m.

¶ 9    On July 8, 2024, defendant appeared before the trial court judge presiding over defendant's AUUW case. The trial court ordered that defendant remain detained based on the executed warrant. On December 9, 2024, defendant petitioned for pretrial release, claiming that his detention was only due to his failure to appear. The State also filed a petition for pretrial detention, alleging that defendant poses a threat to any person or the community and that defendant is a flight risk. The same day, the trial court held a hearing on the petitions and both sides provided factual proffers.

¶ 10    Defense counsel proffered that defendant is a lifelong resident of Cook County and that he could live with his mother if released. Defense counsel noted that the trial court imposed a curfew in defendant's 24 CR 0740201 case, and requested a similar curfew, stating "I think a concurrent curfew on this case would be sufficient to both protect the public and ensure his appearance in

court given that obviously the D-bond was not sufficient at that time and resulted in a warrant that was pending for about a year." He also noted that defendant appeared in court on September 19, 2022, October 26, 2022, November 16, 2022, January 25, 2023, March 29, 2023, and May 1, 2023.

¶ 11 The State proffered that on September 10, 2022, officers responded to a call about a man inside a Subway who claimed he was being threatened by a man who was possibly armed. The victim stated the man, who was not defendant, was grabbing at the victim's waist saying, "I know you've got it. Give it up." When the officers arrived, the victim pointed out a black SUV parked outside and identified the man in the driver's seat as the man who threatened him. Defendant was standing outside the vehicle by the rear driver's side door with a third individual. The officers asked all three men to step to the rear of the vehicle. As one of the officers was speaking to the men, he looked through the rear driver's side window, which was rolled down, and saw the butt of a gun protruding from a small black backpack.

¶ 12 All three men were detained and an officer removed the backpack from the vehicle. Inside the backpack was a black handgun with one round in the chamber and an empty magazine. The bag also contained a wallet with an Illinois driver's license bearing defendant's name. When questioned about the bag, defendant stated it belonged to him but he had no recollection of the gun. Defendant then denied having a Firearm Owner's Identification (FOID) card or a Concealed Carry License (CCL).

¶ 13 The State further proffered that defendant failed to appear in court on March 14, 2023, March 27, 2023, and May 30, 2023, and that defendant had an outstanding warrant for his arrest for approximately 14 months between May 2023 and July 2024. That warrant was only executed

when defendant was returned to court following his arrest for residential burglary and an attempt residential burglary that took place on July 2, 2024, and July 5, 2024, respectively.

¶ 14    In response to questioning by the trial court, the State clarified that it was not alleging that the person accused of threatening the victim in the Subway was defendant or that defendant was the one observed carrying a firearm.

¶ 15    Defendant responded by arguing that he was not in the car where the firearm was located and that someone else was involved in the threats made to the victim in the Subway. He also denied any knowledge of the firearm and pointed out that there was no proffered evidence about fingerprints on the weapon. Defendant further argued that being in possession of a firearm is nonviolent and therefore such an offense does not inherently pose a threat to the community. Finally, defendant argued that his failure to appear was not sufficient for a finding of willful flight to avoid prosecution.

¶ 16    The trial court found that the State proved by clear and convincing evidence that proof was evident or the presumption great that defendant committed a detainable offense. It found that defendant poses a real and present threat to the safety of any person or the community because defendant committed the offense on a street outside a Subway and that, while on bond, defendant failed to appear three times and was subsequently charged with two new felonies, residential burglary and attempt residential burglary. The trial court also found that no conditions of release could mitigate the threat defendant poses because defendant admitted ownership of the bag that contained a firearm. Additionally, the trial court found by clear and convincing evidence that no conditions of release could mitigate the risk of defendant's willful flight based on defendant's

failure to appear, bond forfeiture, and arrest for two new felonies. Finally, the trial court ordered that defendant have no contact with the victim in 24 CR 0740201.

¶ 17    On December 16, 2024, defendant filed a motion for relief, arguing that the State failed to prove that defendant committed a detainable offense and that he poses a real and present threat to the community. He also argued that the State did not properly allege that defendant poses a risk of willful flight and, even if it did, the State did not meet its burden of proof to show that defendant poses a risk of willful flight. He also argued that the trial court's order failed to provide adequate explanation as required by section 110-6.1 of the Code and that the trial court improperly ordered defendant to have no contact with the victim in defendant's residential burglary case. The trial court denied that motion on December 16, 2024, and this appeal followed. Defendant did not file a memorandum before this court, and instead relies on his motion for relief filed in the trial court.

¶ 18                                    II. ANALYSIS

¶ 19    Defendant's appeal presents multiple questions, which can be divided into arguments regarding detention based on a threat to any person or the community, those regarding detention based on a risk of willful flight, and the separate issue of whether the trial court properly ordered defendant to have no contact with the victim in 24 CR 0740201. However, given our disposition of defendant's claims regarding pretrial detention based on a risk of willful flight, and the fact that the Code sets out dangerousness and the risk of willful flight as alternative, independent bases for detention, we need not reach his contentions that his detention was not justified under a theory of dangerousness. 725 ILCS 5/110-6.1(e)(1)-(3) (West 2022).

¶ 20    Section 110-6.1(e) of the Code presumes that all defendants are eligible for pretrial release. *Id*. § 110-6.1(e). When the State seeks pretrial detention on the basis that a defendant is a flight

risk, it must prove by clear and convincing evidence that: (1) the defendant has a high risk of flight and proof is evident or the presumption is great that defendant committed a detainable offense and (2) no conditions can mitigate the defendant's willful flight. *Id*. § 110-6.1(a)(8), (e)(1)-(3).

¶ 21    We review the sufficiency of proffered evidence at a pretrial detention hearing *de novo*, affording no deference to the trial court. *People v. Morgan*, 2025 IL 130626, ¶ 54. The trial court's application of the law is a legal question we review *de novo*. *People v. Stock*, 2023 IL App (1st) 231753, ¶ 20. We address defendant's arguments regarding detention based on the risk of willful flight first.

¶ 22                              A. Detention – Willful Flight

¶ 23    Regarding the State's theory that pretrial detention was warranted because defendant is a high risk of willful flight, defendant raises three arguments: (1) the State did not properly seek detention based on defendant's risk of willful flight because it did not check the appropriate box on its petition for pretrial detention; (2) the State failed to prove that defendant is a flight risk; and (3) the trial court's written order failed to supply an explanation why less restrictive means would not mitigate defendant's risk of flight. We address these issues in turn.

¶ 24    We reject defendant's contention that the State did not properly petition the trial court to detain defendant based on his risk of willful flight because it did not allege that theory of detention. Defendant claims that the State did not check a box labeled "(a)(8) willful flight" under the heading on the petition, "1. The proof is evident or the presumption great that the defendant has committed an eligible offense listed in 725 ILCS 5/110-6.1." First, the State did subsequently check two boxes, one which read that defendant "poses a real and present threat to the safety of any person

or persons or the community, based on the specific articulable facts of the case," and another which stated that defendant "has a high likelihood of willful flight to avoid prosecution."

¶ 25    Second, defendant did not object to the State proceeding on a risk of willful flight theory of detention at the hearing or otherwise appear surprised. To the contrary, defendant's counsel argued specifically that defendant's detention was not justified based on a theory of risk of willful flight. Moreover, to be eligible for detention based on a risk of willful flight, a defendant must be charged with either: (1) one of the felonies enumerated in section 110-6.1(a)(1)-(7) of the Code or (2) any other felony other than a class 4 felony. 725 ILCS 5/110-6.1(a)(8) (West 2022). Given that the State alleged that defendant committed the offense of AUUW, one of the felonies enumerated in section 110-6.1(a)(1)-(7) of the Code, and the State also alleged that defendant has a high likelihood of willful flight to avoid prosecution, we do not agree with defendant that the State failed to allege this theory of detention.

¶ 26    Next, defendant argues, relying on *People v. Slaten*, that the State failed to prove defendant constitutes a flight risk, claiming that only "recurring, uncured failures to appear" can suffice as proof of a risk of willful flight. See *People v. Slaten*, 2024 IL App (2d) 240015, ¶ 21 (quoting *People v. Perez*, 2024 IL App (4th) 230967-U, ¶ 12). The Code defines "willful flight" as "intentional conduct with a purpose to thwart the judicial process to avoid prosecution." 725 ILCS 5/110-1(f) (West 2022). "Isolated instances of nonappearance in court alone are not evidence of the risk of willful flight. Reoccurrence and patterns of intentional conduct to evade prosecution, along with any affirmative steps to communicate or remedy any such missed court date, may be considered as factors in assessing future intent to evade prosecution." *Id.*

¶ 27     Defendant claims that he failed to appear on March 27, 2023, after which a warrant was issued. Defendant then filed a motion to quash the warrant on March 29, 2023, which was granted. Thus, defendant argues he only had one uncured failure to appear on May 30, 2023, and that one uncured failure to appear does not demonstrate defendant's risk of flight. Notably, at the detention hearing, defense counsel stated he was unaware of the third failure to appear on March 14, 2023, and made no attempt to argue that defendant's failure to appear from that date had been cured. Nor does defendant's motion for relief even address the March 14, 2023, failure to appear.

¶ 28     We note that the factual circumstances in *Slaten* and *Perez* are so distinct from this case as to be entirely inapposite. In *Perez*, the defendant failed to appear in court on October 3, 2023, but was subsequently in court on October 5 and 6, 2023. *Perez*, 2024 IL App (4th) 230967-U, ¶¶ 5-6. The trial court found that the defendant's failure to appear demonstrated the defendant's risk of flight, but the appellate court reversed, holding that a nonappearance in court cured by an appearance in response to a summons shall not be considered as evidence of future likelihood of appearance in court and that only recurring, uncured failures to appear are evidence of a high likelihood of willful flight under the Code. *Id*. ¶¶ 8, 12.

¶ 29     Likewise, in *Slaten*, the State argued that the defendant's intentional attempt to evade a traffic stop, which resulted in him fleeing across the border into Wisconsin, as well as one failure to appear in 2009, constituted a high risk of willful flight. *Slaten*, 2024 IL App (2d) 240015, ¶¶ 3, 5, 7. The trial court granted the State's petition for pretrial detention and the appellate court reversed, reasoning that attempts to evade arrest did not fall within the Code's definition of willful flight, which is defined as intentional conduct with a purpose to thwart the judicial process to avoid

prosecution. *Id*. ¶¶ 9, 20. Thus, the appellate court reasoned that one uncured failure to appear in 2009 was not sufficient to demonstrate the defendant's high risk of willful flight. *Id*. ¶ 22.

¶ 30    By contrast, defendant's failure to appear here was not simply an "isolated nonappearance" as defendant suggests where he did not appear in court but attended subsequent court dates. Instead, defendant failed to appear twice in March 2023, only one of which was cured. He then failed to appear a third time in May 2023 and remained at large for approximately thirteen months, only returning to court involuntarily following his arrest for two new felony charges. This is not a case where defendant made a simple scheduling error. The record reflects that defendant's nonappearance and, indeed, disappearance, for thirteen months was a willful act meant to thwart his prosecution. The only thing that brought defendant back to court was his arrest for additional felony offenses. We reject defendant's bizarre argument that his previous willful, prolonged flight from prosecution lasting more than a year was somehow not evidence of defendant's risk of willful flight in the future; defendant has demonstrated his willingness to flee to avoid prosecution and the trial court was correct in ordering defendant's detention so as not to allow defendant an opportunity to flee again. There was sufficient evidence to demonstrate that defendant poses a high risk of flight.

¶ 31    Finally, defendant argues that the trial court failed to adequately explain why less restrictive means would not mitigate defendant's risk of flight. See 725 ILCS 5/110-6.1(h)(1) (West 2022). Here, the trial court's written order was sufficiently detailed to satisfy the Code's requirements. The written order specified that no conditions of pretrial release could mitigate defendant's risk of flight because defendant failed to appear multiple times, culminating in the

issuance of a warrant and a bond forfeiture, and because defendant did not return to court until he was arrested on two new felony charges.

¶ 32    Accordingly, we find no error in the trial court's judgment which ordered defendant's pretrial detention based on defendant's risk of willful flight.

¶ 33                                    B. No Contact Order

¶ 34    Defendant's remaining contention is that the trial court erred in ordering that he have no contact with the victim in defendant's residential burglary case. He argues this was improper because the individual in question is not a victim in the instant case and because the lack of identifiers of the victim makes the condition vague.

¶ 35    Section 110-6.1 of the Code states that, "If the defendant is denied pretrial release, the court may impose a no contact provision with the victim or other interested party that shall be enforced while the defendant remains in custody." 725 ILCS 5/110-6.1(m)(2) (West 2022). Defendant offers no authority or non-conclusory argument to demonstrate why "victim or other interested party" cannot include victims from other pending cases or charges against defendant, and a reviewing court is not a depository into which a party may dump the burden of argument and research. *People ex rel. Illinois Dept. of Labor v. E.R.H. Enterprises*, 2013 IL 115106, ¶ 56.

¶ 36    Defendant's argument also contains no claim that the charging instrument in 24 CR 0740201 does not include the victim's name or any other explanation for how the trial court's order was vague. As the State notes, the provision that allows the trial court to impose no-contact orders is because, "[t]he Code, as amended, takes a special interest in protecting crime victims." *People v. Acosta*, 2024 IL App (2d) 230475, ¶ 31. Defendant has not provided any persuasive

reasoning why the trial court's ability to impose no contact provisions as part of a detention order does not extend to other pending felony cases.

¶ 37                                III. CONCLUSION

¶ 38    The trial court did not err in granting the State's petition for pretrial detention or denying defendant's motion for relief. For the foregoing reasons, we affirm the judgment of the trial court.

¶ 39    Affirmed.