2025 IL App (1st) 250950

FOURTH DIVISION
September 4, 2025

Nos. 1-25-0950B & 1-25-1053B, Cons.

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | Nos. 25 CR 1324 |
| | ) | 25 CR 4926 |
| JAMES RIOS, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Kenneth Wadas, |
| | ) | Ursula Walowski, |
| | ) | Judges presiding. |

_____

PRESIDING JUSTICE NAVARRO delivered the judgment of the court, with opinion. Justices Mikva and Oden Johnson concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, James Rios, appeals from the circuit court's orders revoking his pretrial release in his armed robbery case and denying his pretrial release in his escape case, under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2024)), as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act. On appeal, Rios argues that his escape charge could not form a valid basis to revoke his pretrial

release in the armed robbery case and that the circuit court should not have denied him pretrial release in the escape case based on willful flight. For the following reasons, we affirm the circuit court's order revoking Rios's pretrial release in the armed robbery case, and we affirm the circuit court's order denying pretrial release in the escape case.

¶ 2                                    I. BACKGROUND

¶ 3      Rios was charged with armed robbery (720 ILCS 5/18-2(a)(1) (West 2024)), in case number 25-CR-1324, following an incident that occurred on December 24, 2024. Rios was granted pretrial release on January 13, 2025, with electronic monitoring (EM). The conditions of EM stated that he "shall remain within [his] residence 24 hours a day except as provided by the statute and listed below." Below, it stated, "Defendant shall be placed on a movement schedule for basic activities two days a week, pursuant to 730 ILCS 5/5-8A-4, from 8:00 AM - 4:00 PM."

¶ 4      On April 2, 2025, the State filed a petition alleging that Rios had violated the conditions of pretrial release because he was "declared AWOL from EM after not returning to host residence." The State requested, and the court issued, a warrant for Rios's arrest that same day.

¶ 5      On April 3, 2025, the State charged Rios with one count of escape for violating EM. See 730 ILCS 5/5-8A-4.1 (West 2024). Rios was arrested on April 7, 2025, and appeared in court on April 8, 2025. The State filed a petition to deny Rios pretrial release on the escape charge, based on willful flight (725 ILCS 5/110-6.1(a)(8) (West 2024)), arguing that there was a high likelihood of willful flight to avoid prosecution and that no condition or combination of conditions set forth in section 110-10(b) of the Code could mitigate that risk (see *id.* § 110-10(b)).

¶ 6      A hearing on the State's petition was held on April 8, 2025. The State argued:

          "On March 31 of this year the Sheriff's Department received a strap tamper

          of the defendant's GPS device in the area of 65 and Rockwell. Police responded to

that location where the strap tamper occurred but they did not find the defendant or the device. They ultimately went and spoke to his mother who he was staying with and which was his assigned home. She indicated she had not seen him since he went out on the morning of the 31[st].

The officers returned later on April 1 [and] toured the area looking for the defendant. Did not find him. Spoke with his mother again who indicated she had not seen him since the morning of the 31[st]. He was subsequently declared AWOL from electronic monitoring. On April 7 of this year officers of the fugitive task force located the defendant at an address on 61[st] Street. They encountered him and arrested him on that warrant."

¶ 7    The State indicated that Rios's criminal history included: a 2021 aggravated battery to a police officer conviction, a 2020 "6-303 felony," a 2022 "gun conviction," a 2019 felony driving under the influence, two separate 2010 felonies (a "6-303" and a domestic battery conviction), and a 1999 narcotics conviction. He had three prior "failure to appears" as well.

¶ 8    Defense counsel argued that Rios did not attempt to leave the jurisdiction and did not attempt to flee from arresting officers. She indicated "that Mr. Rios was in the midst of a mental health episode when he was not found at his mother's residence." Defense counsel stated that "within a week of leaving" his mother's house, he called his mother to tell her where he was and asked her to contact law enforcement agencies, "essentially attempting to turn himself in."

¶ 9    In denying Rios pretrial release, the circuit court found that the proof was evident and the presumption great that he committed a detainable offense and that there was no condition or combination of conditions that could mitigate his risk of willful flight. The court ordered Rios detained on the escape charge.

¶ 10   The State filed a petition for the revocation of pretrial release in Rios's armed robbery case based on the new charge of escape on April 8, 2025. See *id.* § 110-6(a).

¶ 11   On April 11, a hearing was held on the State's revocation petition. Defense counsel argued that this would be "more appropriately handled as a sanction instead." Counsel expressed an understanding that the State had charging discretion, and in this case decided to charge Rios with a new felony charge but argued that because the allegation was "leaving the location without authority, *** that seems, to me, more a violation of conditions of pretrial release." Defense counsel argued that the language in the complaint in the escape case tracked the language in the previous version of the escape statute, and not the current version. Counsel argued that Rios did not miss a court date and that he did not attempt to evade prosecution.

¶ 12   The State responded:

"[W]hatever the complaint is for First Appearance Court, the First Appearance Court judge makes findings there, they did make findings, they allowed the case to proceed from that point forward. Certainly this case will be indicted. The language will be amended in the complaint.

But the substance of the nature, what the defendant did, doesn't change. He went on essential movement and he didn't come back; his host site didn't know where he was and they could not locate him for two days; and then we had to motion the case up to ensure he could be located through a warrant."

¶ 13   The court found that the State proved by clear and convincing evidence that no condition or combination of conditions of release would reasonably (a) ensure the appearance of Rios for later hearings and (b) prevent Rios from being charged with a subsequent felony or a Class A

misdemeanor. At the conclusion of the hearing, the court revoked Rios's pretrial release and ordered him detained.

¶ 14    On May 7, 2025, Rios filed a motion for relief in the escape case, arguing that the State failed to show by clear and convincing evidence that the proof was evident or the presumption great that Rios committed the offense of escape, and the court's finding that Rios posed a high risk of willful flight to avoid prosecution and that no condition or combination of conditions could mitigate that risk was in error.

¶ 15    On May 27, 2025, a hearing was held on Rios's motion for relief. Defense counsel argued that the meaning of "geographic boundaries" in the escape statute referred to Cook County, not the property boundaries of Rios's host home, and that there were no allegations that Rios left Cook County. Defense counsel also argued that there was no evidence presented that Rios intended to evade prosecution. The State responded that Rios was given the pretrial release condition of EM "with no movement," that he asked for movement and was denied, and then shortly after there was a strap tamper and Rios was declared absent without leave (AWOL). The court denied Rios's motion for relief, stating:

> "I disagree with your analysis here. I don't find that the proof in this case—well, first of all, as to the count that's charged requires that he leaves Cook County jurisdiction, and furthermore it would lead to an absurd result that if you violate EM and you don't abide by its conditions that the State has to somehow prove a negative as to where he went and where he's going."

¶ 16    Rios also filed a motion for relief in the armed robbery case. In his motion, he argued that a new charge of escape could not properly serve as the basis for revocation of his pretrial release. He maintained that it should be an alleged violation of a condition of pretrial release and not a new

criminal charge. He contended that the allegation was his failure to abide by the conditions of EM by not being at his verified address and being declared AWOL, which were mere violations of a condition of his pretrial release. Rios argued that a sanction should have been imposed for that violation. See *id.* § 110-6(f).

¶ 17    Defense counsel also argued that the escape charge could not serve as a basis for revocation because it was "fatally defective." Namely, that the current version of the statute governing escape does not define "geographic boundaries," and Rios never left Cook County.

¶ 18    A hearing was held on Rios's motion for relief in the armed robbery case on June 9, 2025, where the State argued that the facts of this case met the requirements for "escape from electronic monitoring" and that they filed for revocation of pretrial release based on the new charge of escape—a case that was currently pending before a different judge (case number 25-CR-4926). The State contended that defense counsel was trying to "litigate the new case through this revocation hearing," but that now was not the time to do so, and that the circuit court had made the appropriate finding by revoking his pretrial release based on a new felony charge of escape.

¶ 19    The circuit court found that Rios, while on pretrial release for armed robbery, was charged with a new felony, escape, and while it did not know whether that new charge was meritorious, the fact that there was a new felony charge was "enough to revoke pretrial release." Rios's motion for relief was denied.

¶ 20    Rios now appeals from the denial of his motion for relief in the escape case, as well as the denial of his motion for relief in the armed robbery case.

¶ 21                                        II. ANALYSIS

¶ 22    On appeal, Rios contends that (1) the new charge of escape "cannot properly serve as the basis for revocation of pretrial release" in his armed robbery case and (2) that the circuit court should have granted him pretrial release in the escape case.

¶ 23                    A. Revocation of Pretrial Release

¶ 24    Rios argues that the charge of escape in case number 25-CR-4926 "alleges a violation of a condition of pretrial release and not new criminal conduct," and therefore, it cannot properly serve as the basis for revocation of pretrial release in his armed robbery case.

¶ 25    Section 110-6 of the Code provides that, when a defendant has been previously granted pretrial release, the release may be revoked following a hearing only if the defendant is charged with a felony or a Class A misdemeanor alleged to have occurred during the defendant's pretrial release. *Id.* § 110-6(a). The State must prove, by clear and convincing evidence, that no conditions would reasonably ensure the defendant's appearance at future hearings or prevent him from being charged with a future felony or Class A misdemeanor offense. 725 ILCS 5/110-6(a) (West 2024). The proceedings in this matter involved only the parties' proffers and documentary evidence. Accordingly, our review is *de novo*. See *People v. Morgan*, 2025 IL 130626, ¶ 51; *People v. Vega*, 2025 IL App (2d) 250002-U, ¶ 17.

¶ 26    Rios was charged in this case with armed robbery (720 ILCS 5/18-2(a)(1) (West 2024)), and while on pretrial release, he was charged with a new felony, escape (730 ILCS 5/5-8A-4.1(a) (West 2024)). The escape statute reads:

"A person charged with a felony, or charged with an act which, if committed by an adult, would constitute a felony, conditionally released from the supervising authority through an electronic monitoring or home detention program, who knowingly escapes or leaves from the geographic boundaries of an electronic

- 7 -

monitoring or home detention program with the intent to evade prosecution is guilty

of a Class 3 felony." *Id.*

¶ 27    Here, Rios was charged with the felony of escape that was alleged to have occurred during his pretrial release. As the circuit court noted, this meets the requirements of the Code because pretrial release may be revoked if the defendant is charged with a new felony that is alleged to have occurred during his pretrial release. 725 ILCS 5/110-6(a) (West 2024).

¶ 28    Rios maintains, however, that the indictment in case number 25-CR-4926 does not track the language of the current version of the escape statute, which alleged that Rios was "absent without leave from his assigned location, and he remained in violation for at least 48 hours," and that it therefore "does not amount to a facially valid charge" under the wording of the current escape statute. We are unpersuaded by this argument.

¶ 29    In *People v. Hammerand*, 2024 IL App (2d) 240500, ¶ 19, the appellate court noted that while a petition to deny pretrial release requires the State to show by clear and convincing evidence that the proof is evident or the presumption is great that a defendant committed a detainable offense (see 725 ILCS 5/110-6.1(e)(1) (West 2022)), "section 110-6(a) contains no corresponding language that, in order to revoke the release, the State must prove that a defendant committed a felony or Class A misdemeanor while on pretrial release." The court stated that rather, "regarding proof of the commission of an offense, the plain language of section 110-6 requires only that a defendant be 'charged with a felony or Class A misdemeanor that is alleged to have occurred during the defendant's pretrial release.' " *Hammerand*, 2024 IL App (2d) 240500, ¶ 19 (quoting 725 ILCS 5/110-6(a) (West 2022)). The court found that the defendant "was charged with a felony and multiple Class A misdemeanors alleged to have occurred while on pretrial release; this alone is sufficient to support a revocation of pretrial release." *Id.*

¶ 30    Similarly here, Rios was charged with a felony alleged to have occurred while on pretrial release, and this alone is sufficient to support a revocation of pretrial release. Accordingly, we affirm the circuit court's order revoking Rios's pretrial release in the armed robbery case.

¶ 31                                    B. Denial of Pretrial Release

¶ 32    Rios also contends that the circuit court should not have granted the State's petition to detain him prior to trial on his escape charge because the State failed to show by clear and convincing evidence that (1) Rios had a high likelihood of willful flight to avoid prosecution, (2) the proof was evident or the presumption great that Rios committed a detainable offense, and (3) that no condition or combination of conditions could mitigate the risk of willful flight.

¶ 33    When the State seeks pretrial detention on the basis that a defendant is a flight risk, it must prove by clear and convincing evidence that (1) the defendant has a high likelihood of willful flight to avoid prosecution, (2) the proof is evident or the presumption is great that the defendant committed a detainable offense, and (3) no conditions or combination of conditions can mitigate the defendant's willful flight. *People v. Bailey*, 2025 IL App (1st) 242563-U, ¶ 20 (citing 725 ILCS 5/110-6.1(a)(8), (e)(1)-(3) (West 2022)). In its detention order, the circuit court must "make a written finding summarizing [its] reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not *** prevent the defendant's willful flight from prosecution." 725 ILCS 5/110-6.1(h)(1) (West 2024). We review the court's decision to deny pretrial release *de novo*. See *Morgan*, 2025 IL 130626, ¶ 51.

¶ 34    We first address Rios's contention that the State failed to show by clear and convincing evidence that defendant had a high likelihood of willful flight to avoid prosecution. The Code defines willful flight as:

"intentional conduct with a purpose to thwart the judicial process to avoid prosecution. Isolated instances of nonappearance in court alone are not evidence of the risk of willful flight. Reoccurrence and patterns of intentional conduct to evade prosecution, along with any affirmative steps to communicate or remedy any such missed court date, may be considered as factors in assessing future intent to evade prosecution." 725 ILCS 5/110-1(f) (West 2024).

¶ 35    This court has found that the plain language of section 110-6.1(a)(8), "coupled with the definition of willful flight as found in section 110-1(f) clearly refers to a defendant's willful avoidance of prosecution in court by failing to appear at court hearings and similar behaviors." *People v. Quintero*, 2024 IL App (1st) 232129-U, ¶ 22.

¶ 36    Here, Rios's strap tamper and failure to return to his host residence constituted intentional conduct with a purpose to thwart the judicial process to avoid prosecution. Rios's participation in the EM program was a condition of his pretrial release in his armed robbery case. By tampering with the strap and failing to return to his host residence, he took overt steps to thwart the judicial process to avoid prosecution in the armed robbery case. Additionally, at the hearing on April 8, 2025, the prosecutor indicated that Rios had three prior "failures to appear." Based on these facts alone, we find that the State met its burden of showing by clear and convincing evidence that Rios had a high likelihood of willful flight to avoid prosecution.

¶ 37    Rios maintains, however, relying on *People v. Slaten*, 2024 IL App (2d) 240015, that the circuit court improperly relied on his failure to comply with the EM program as the basis for showing that he had a high likelihood of willful flight to avoid prosecution. In *Slaten*, the State argued that the defendant's intentional attempt to evade a traffic stop, which resulted in him fleeing across the border into Wisconsin, as well as one failure to appear in 2009, constituted a high risk

of willful flight. *Id.* ¶¶ 3-7. The circuit court granted the State's petition for pretrial detention and the appellate court reversed, reasoning that attempts to evade arrest did not fall within the Code's definition of willful flight, which is defined as intentional conduct with a purpose to thwart the judicial process to avoid prosecution. *Id.* ¶¶ 9, 20. The appellate court reasoned that that one uncured failure to appear in 2009 was not sufficient to demonstrate the defendant's high risk of willful flight. *Id.* ¶ 22.

¶ 38 By contrast, Rios had, according to the State, three prior failures to appear. He also remained at large after his April 2, 2025, failure to appear, only returning to court involuntarily following his arrest nearly a week later. Moreover, EM was a condition of his pretrial release in the armed robbery case, and therefore tampering with the EM strap and going AWOL from the EM program certainly amounted to intentional conduct with a purpose to thwart the judicial process to avoid prosecution. This is different from being pulled over and attempting to avoid arrest by fleeing the scene. The EM program was part of the judicial process in his armed robbery case, and his escape from EM was therefore an attempt to thwart that judicial process.

¶ 39 We next address Rios's contention that the State failed to show by clear and convincing evidence that the proof is evident or the presumption great that he committed the charge of escape, which is defined again as:

> "A person charged with a felony, or charged with an act which, if committed by an adult, would constitute a felony, conditionally released from the supervising authority through an electronic monitoring or home detention program, who knowingly escapes or leaves from the geographic boundaries of an electronic monitoring or home detention program with the intent to evade prosecution is guilty of a Class 3 felony." 730 ILCS 5/5-8A-4.1(a) (West 2024).

¶ 40　Rios argues that because he never left the "geographic boundaries" of the electronic monitoring program, he cannot be charged with escape. Rios contends that because "geographic boundaries" is not defined in the statute, it must be given its plain and ordinary meaning, which would be the boundaries of the monitoring agency's authority, which in this case is Cook County. As support for this interpretation, Rios relies on the fact that elsewhere in the statute, the term "property boundaries" is used, and therefore, if the escape statute in question meant that a defendant could not leave the property, it would have stated the same. See *id.* § 5-8A-4(A) ("The participant may be instructed to remain within the interior premises or within the property boundaries of his or her residence at all times during the hours designated by the supervising authority."). We are unpersuaded by this argument.

¶ 41　The terms of Rios's pretrial release stated that Rios was to be "placed in the sheriff's EM program" and had to remain within his residence for 24 hours a day, except for movement scheduled for basic activities two days a week, from 8 a.m. to 4 p.m. On March 31, 2025, the sheriff's department received an alert of a "strap tamper" for Rios. Officers from the sheriff's department went to where he was last indicated on the monitoring program, and he was not there. They then went to his host residence (his mother's house), and he was not there either. At that point, he was declared AWOL from the EM system. This certainly meets the requirement of the escape statute which states that a person commits the felony of escape if that person "knowingly escapes *** an electronic monitoring *** program with the intent to evade prosecution." *Id.* § 5-8A-4.1(a). Tampering with an EM strap, and therefore being declared AWOL from the EM monitoring program, constitutes knowingly escaping the program.

¶ 42　While Rios focuses his argument on the portion of the escape statute that discusses geographical boundaries, we note that the statute states that a person who "knowingly escapes *or*

leaves from the geographic boundaries" of an electronic monitoring program, with the intent to evade prosecution, is guilty of a Class 3 felony. (Emphasis added.) *Id.* Our finding that tampering with his EM strap and being declared AWOL from the EM program qualifies as knowingly escaping from the EM program renders the portion of the statute that comes after the "or" unnecessary for our consideration based on the circumstances of this particular case.

¶ 43    Finally, Rios argues that the circuit court failed to adequately explain why less restrictive means would not mitigate his risk of flight. See 725 ILCS 5/110-6.1(h)(1) (West 2024). Here, the circuit court's written order was sufficiently detailed to satisfy the Code's requirements. It specified that no condition or combination of conditions could mitigate the defendant's willful flight and that less restrictive conditions would not prevent his willful flight from prosecution because he had been AWOL from the EM program for approximately one week and Rios had demonstrated an inability or unwillingness to follow the conditions of the EM program. The court noted that Rios had been on EM for less than two months before escaping and that Rios had a failure to appear on an underlying case. The court also stated that he was "high risk" for public safety assessment.

¶ 44    To the extent that Rios argues that the court improperly relied on the fact that Rios "failed to comply with electronic monitoring in [the armed robbery case] as the basis for why electronic monitoring would not work in this instance," we reject that argument. Statutory law and case law specifically allows for this type of consideration when determining whether any condition or combination of conditions could mitigate a defendant's risk of flight under section 110-6(e)(3). See *id.* § 110-5(a)(5) (in determining which conditions of pretrial release will reasonably ensure the appearance of a defendant, the court shall take into account "the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process that would be posed by

the defendant's release"); *Quintero*, 2024 IL App (1st) 232129-U, ¶ 22 (circuit court could consider evading arrest under section 110-5(a)(5) of the Code when considering pretrial release); *People v. Sims*, 2024 IL App (4th) 231335-U, ¶ 27 ("a defendant's attempts to evade arrest *** could be considered when determining whether any condition or combination of conditions could mitigate a defendant's risk of flight under subsection 110-6.1(e)(3)")

¶ 45　　Accordingly, we find no error in the circuit court's judgment that ordered Rios's pretrial detention based on his risk of willful flight.

¶ 46　　　　　　　　　　　　III. CONCLUSION

¶ 47　　For the foregoing reasons, we affirm the orders of the circuit court of Cook County denying Rios's motions for relief in both the armed robbery case and the escape case.

¶ 48　　Affirmed.

***People v. Rios*, 2025 IL App (1st) 250950**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, Nos. 25-CR-1324, 25-CR-4926; the Hon. Kenneth Wadas and the Hon. Ursula Walowski, Judges, presiding. |
| **Attorneys for Appellant:** | Sharone R. Mitchell Jr., Public Defender, of Chicago (Rebecca Cohen, Assistant Public Defender, of counsel), for appellant. |
| **Attorneys for Appellee:** | Eileen O'Neill Burke, State's Attorney, of Chicago (James J. Stumpf, Assistant State's Attorney, of counsel), for the People. |