NOTICE
Decision filed 01/16/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250820-U

NO. 5-25-0820

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Effingham County. |
| v. | ) ) | No. 24-CF-121 |
| HEATHER M. LINDEMANN, | ) ) | Honorable Bryan M. Kibler, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BARBERIS delivered the judgment of the court.
Justices Vaughan and Sholar concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's orders granting the State's motion to revoke defendant's pretrial release and denying defendant's motion for relief where the record contained convincing evidence that no conditions of release would reasonably ensure defendant's appearance at future hearings or prevent her from being charged with subsequent felonies or Class A misdemeanors.

¶ 2    Defendant, Heather M. Lindemann, appeals orders of the Effingham County Circuit Court granting the State's motion to revoke pretrial release and denying her subsequent motion for relief. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    On May 3, 2024, the State filed a two-count information charging defendant with unlawful possession of less than five grams of methamphetamine (720 ILCS 646/60(a)(1) (West 2022)) and resisting a police officer (720 ILCS 5/31-1(a) (West 2022)). The charges stemmed from a search

1

of defendant's vehicle during an April 6, 2024, traffic stop. Defendant's first court appearance on the charges was on May 6, 2024. Although the record does not contain a transcript of that hearing, the State did not file a petition to deny pretrial release at that time, and defendant later alleged that the issue of pretrial release was not addressed. On May 15, 2024, a grand jury returned a bill of indictment on the methamphetamine charge.

¶ 5     On February 6, 2025, defendant filed a motion to suppress evidence, arguing that the search of her vehicle was not consensual, contrary to the statement of the officer involved. She failed to appear for a status hearing held that day, and her attorney indicated that he did not know why she was not present.

¶ 6     On March 10, 2025, the matter came for a scheduled hearing on defendant's motion to suppress. However, defendant again did not appear. The court continued the matter with the agreement of defense counsel.

¶ 7     On June 30, 2025, the State filed a verified petition to revoke pretrial release. In it, the State asserted that defendant was subject to statutory conditions of pretrial release, including a condition that she refrain from violating any criminal statutes. See 725 ILCS 5/110-10(a)(4) (West 2024). The State alleged, however, that while this matter was pending, defendant was charged with methamphetamine trafficking and unlawful possession of methamphetamine (both Class X felonies) in Effingham County case No. 25-CF-175 and with theft (a Class 2 felony) and criminal damage to property (a Class 4 felony) in Effingham County case No. 25-CF-177.[1] The State further alleged that no condition or combination of conditions of release would reasonably assure

_____

[1]On July 1, 2025,, the State filed an additional information in case No. 25-CF-177, charging defendant with cruel treatment of animals (a Class A misdemeanor).

defendant's appearance at subsequent hearings or prevent her from being charged with additional felonies or Class A misdemeanors.

¶ 8    The circuit court held a hearing on the State's petition that day. The State first noted that defendant had been released with statutory conditions, including a requirement that she not violate any criminal statutes. The State asserted, however, that while defendant was on pretrial release, two new cases had been filed against her involving multiple charges.

¶ 9    The State then proffered the factual bases underlying the new charges. The first case (No. 25-CF-175) involved a January 2025 traffic stop. The State informed the court that during the course of the stop, defendant and her co-defendant were given *Miranda* warnings and subsequently admitted that they went to Missouri to purchase approximately 109 grams of methamphetamine.

¶ 10    With respect to the charges involved in the second case (No. 25-CF-177), the State told the court that an individual named Tami Hutchison reported the theft of Madame Alexander dolls valued at approximately $100,000 from a storage unit and that two anonymous callers to Crime Stoppers reported that defendant and Cody Sapp were seen stealing items from storage units in the Altamont area. The callers also mentioned that defendant and Sapp attempted to sell items stolen from the storage units, including porcelain dolls. The State told the court that when officers executed a warrant for defendant's arrest, they saw dolls in plain view. After being arrested and read her *Miranda* rights, defendant provided officers with the locations of additional dolls. Subsequently, officers executed a search warrant and discovered "hundreds" of dolls, some of which had "significant damage." The State argued "that there is no set of conditions that can assure that she will not continue to violate the criminal statutes of any jurisdiction."

¶ 11    In response, defendant acknowledged that the first condition for revocation of pretrial release was satisfied because "possibly new charges" were filed while she was on pretrial release.

3

She argued, however, that there was no evidence suggesting that she was a flight risk or a violent person. She argued that she had always been cooperative with police and that "substance abuse [was] at the root of the issue here." Defense counsel stated as follows: "I would suggest that placing her on electronic home confinement, GPS monitoring, substance abuse evaluation with subject to any treatment recommended therein would mitigate any fear that this Court had."

¶ 12    Ruling from the bench, the circuit court first found that defendant was on pretrial release when the offenses at issue in the new cases were committed. The court next found that the State proved by clear and convincing evidence that no condition or combination of conditions would prevent defendant from committing additional Class A misdemeanors or felonies.

¶ 13    In a June 30, 2025, docket entry, the court found by clear and convincing evidence that (1) defendant committed the offenses charged in case Nos. 25-CF-175 and 25-CF-177, (2) no condition or combination of conditions would prevent her from committing new felonies or Class A misdemeanors, and (3) "Defendant also presents a threat to the public." The court therefore ordered her detained.

¶ 14    Scheduled hearings on defendant's motion to suppress were continued multiple times while the parties engaged in plea negotiations. Meanwhile, on August 8, 2025, defendant was transported from the Effingham County jail to St. Anthony's Memorial Hospital for emergency medical treatment.[2] The circuit court granted her a medical furlough allowing her to be transferred to a facility in Peoria for further treatment. On August 11, 2025, defense counsel filed a motion for the appointment of a psychiatrist in one of defendant's other pending cases. The motion alleged that,

_____

[2]According to a subsequently filed psychiatric report, defendant required emergency care after a suicide attempt.

at that time, defendant was confined to a psychiatric hospital in Peoria and that counsel had a *bona fide* doubt as to defendant's fitness to stand trial. The court appointed Dr. Jerry Boyd.

¶ 15 On August 14, 2025, defendant was discharged from the hospital in Peoria. Staff advised her that she was required to report to the Effingham County jail immediately and arranged cab service to transport her there. However, she did not report to the jail as required. Defendant's failure to return to jail after her furlough led to a charge of escape (720 ILCS 5/31-6(a) (West 2024)) in Effingham County case No. 25-CF-270.

¶ 16 The circuit court held a status hearing on several cases pending against defendant on September 18, 2025. Defendant appeared by Zoom, and the court noted that her location was unknown. The State requested a bench warrant for her arrest, which the court granted. The following day, officers arrested defendant pursuant to that warrant. She resisted arrest, leading to a charge of resisting a police officer in case No. 25-CM-172.

¶ 17 On September 22, 2025, the circuit court held a hearing on petitions to revoke pretrial release in case Nos. 25-CF-175 and 25-CF-177 and a petition to deny pretrial release in case No. 25-CF-270. During that hearing, the State provided the court with the factual basis underlying the charge of escape in case No. 25-CF-270, noting in particular that defendant did not return to the Effingham County jail upon her discharge from the hospital even though hospital staff provided her with transportation there by cab. In addition, the State told the court that when officers arrested defendant pursuant to a bench warrant on September 19, 2025, defendant attempted to pull away from the officers and told them she could not return to jail. The court granted the State's motions in all three cases.

¶ 18 On October 2, 2025, this matter came for a scheduled hearing on defendant's motion to suppress. The State conceded "that the motion is well taken." The court asked if the State intended

to *nolle prosequi* the case, to which the prosecutor replied, "Not as of yet." He explained that the charge of resisting a police officer "would actually be potentially unaffected by the motion to suppress." He also noted that at the time of the hearing, defendant was detained on charges in multiple cases.

¶ 19    Defense counsel indicated that he was working on a written motion for relief but explained that it was taking some time due to the complicated procedural history of defendant's pending cases. He informed the court that while receiving treatment for the injuries she sustained in jail, defendant was diagnosed with cranial aneurysms, and she had a surgical consultation for this condition scheduled in Champaign County on October 9. Counsel asked that the court grant defendant pretrial release to allow her to deal with her medical condition. He further stated as follows: "If the Court is not prepared to do that for today, I would ask for a setting for the written motion that I intend to file in the next couple of days/early next week."

¶ 20    The court asked the State's position on two possible options: (1) placing defendant on pretrial release with conditions, or (2) giving her a furlough for her October 9 appointment, possibly with GPS monitoring. The State objected to both options.

¶ 21    In support of its objection, the State asserted that defendant was facing several sentences with a minimum of 20 years in each case and argued that defendant demonstrated she was incapable of refraining from committing Class A misdemeanors or higher offenses. The State emphasized that defendant did not return from her previous medical furlough, and noted that under the County Jail Act, jail personnel were required to transport her to any necessary medical appointments.

¶ 22    Defendant argued in response that because she was never subject to GPS monitoring or other conditions of pretrial release previously, her response to such conditions was unknown. In

addition, she asserted that she was afraid that the stress of remaining in jail would aggravate her medical condition, possibly leading to her death.

¶ 23    In ruling from the bench, the court noted that defendant did not return from the furlough she was previously granted and that the court had found probable cause on charges of "numerous felonies." The court therefore found that defendant was a flight risk. The court stated, "I don't think there's a less restrictive alternative short of detention." In addition, the court found that, due to the lengthy sentences defendant faced, "the incentive to run would be great." The court thus denied defendant's request for release.

¶ 24    The court entered a continuing detention order that day. In a docket entry, the court granted defendant's motion to suppress and ordered the Sheriff's Department to take defendant to her October 9, 2025, medical appointment.

¶ 25    On October 6, 2025, defendant filed a motion for relief pursuant to Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024). She alleged that she was arrested on the two charges at issue on April 6, 2024, but released with a notice to appear. She appeared *pro se* at a May 6 hearing pursuant to the notice to appear, and she was again released. Defendant asserted that the court did not address conditions of pretrial release at that time. She alleged that while she was hospitalized in August 2025 a scan of her cervical spine revealed the presence of brain aneurysms, a potentially life-threatening condition. She stated that she had an appointment scheduled with a neurosurgeon in Champaign on October 9, 2025. Finally, defendant alleged that she had substantial connections to the community, "including family ties," and that she was not convicted of any previous felony or violent crime.

¶ 26    The circuit court held a hearing on defendant's motion for relief that day. Asked if he had any proffers, defense counsel replied, "Just to say, Judge, that Ms. Lindemann did not intentionally

7

escape from jail. She is—received very startling and grave health news while she was hospitalized."

¶ 27   The State proffered additional facts concerning the events of August 14, 2025, noting that when defendant was discharged from the hospital that day, hospital staff called the Effingham County Sheriff's Department to inform them of defendant's release. The caller indicated that hospital staff provided defendant with a cab, gave her cab fare, told her she was required to return to the jail, and gave the cab driver the address of the jail. The State argued that, in light of these facts, defendant's failure to return to jail indicated that "she had to have intentionally told the cab driver not to go to the jail, and to change the destination that he was given."

¶ 28   The State emphasized that defendant was facing numerous additional charges. The State proffered additional facts concerning two of those charges. Specifically, with respect to the theft charge at issue in case No. 25-CF-177, the State indicated that the estimated value of the stolen dolls was $60,000. As to the charge of cruel treatment of animals, the State asserted that defendant's dogs were all "extremely underweight" with sores all over their bodies, including near their eyes. In addition, they were found in a pen covered in feces. In conclusion, the State argued that no conditions of release would prevent defendant from committing additional felonies or Class A misdemeanors.

¶ 29   In ruling from the bench, the court noted that its primary concern was defendant's failure to return to jail following her medical furlough even though she knew she was required to do so. In addition, the court emphasized that defendant was facing a possible sentence of between 18 and 80 years on the most serious of the pending charges (methamphetamine trafficking), giving her "every incentive to not come back to court and face that charge." The court further noted that defendant committed an additional offense. The court stated, "So I think both sections apply, not

likely to appear, and she will likely commit further Class A or greater offenses while this case—while all these cases continue to wind its way through the system." Finding that less restrictive alternatives to continued detention did not exist, the court denied defendant's request for release.

¶ 30    The court entered a written order for continued detention the same day. On October 10, 2025, defendant filed a timely notice of appeal pursuant to Illinois Supreme Court Rule 604(h)(1)(iii) (eff. Apr. 15, 2024).

¶ 31                                II. ANALYSIS

¶ 32    On appeal, defendant filed a notice in lieu of memorandum. As such, her motion for relief serves as her argument on appeal. Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024).

¶ 33    All criminal defendants are presumptively eligible for pretrial release, even those charged with violent offenses. *People v. Lopez*, 2025 IL App (2d) 240709, ¶ 20; see also 725 ILCS 5/110-2(a) (West 2024). Pretrial release may only be denied "in certain statutorily limited situations." *Lopez*, 2025 IL App (2d) 240709, ¶ 15 (citing 725 ILCS 5/110-6.1(e) (West 2022)). The circuit court may deny pretrial release if the State proves by clear and convincing evidence that (1) the proof is evident or the presumption great that defendant committed a detainable offense, (2) defendant poses either a flight risk or a real and present threat to the safety of any person or the community, and (3) conditions of pretrial release would not prevent defendant's willful flight from prosecution and/or mitigate the threat. *People v. Horne*, 2023 IL App (2d) 230382, ¶ 16.

¶ 34    After a defendant has been granted pretrial release, the circuit court may revoke release if defendant is charged with a felony or a Class A misdemeanor based on conduct alleged to have occurred while defendant was on pretrial release. *People v. Davis*, 2024 IL App (5th) 240120, ¶ 14 (citing 725 ILCS 5/110-6(a) (West 2022)). Although the court may consider revocation of release either *sua sponte* or upon verified petition filed by the State, the court must hold a hearing at which

9

the State bears the burden of proving by clear and convincing evidence that no condition or combination of conditions of release will reasonably ensure that defendant will appear for future hearings and/or will not commit subsequent felonies or Class A misdemeanors. *Id.* (citing 725 ILCS 5/110-6(a) (West 2022)).

¶ 35    Our standard of review on appeal depends on the nature of the evidence presented at the hearing. Where the parties present the testimony of live witnesses, we review the circuit court's decision to determine whether it is against the manifest weight of the evidence. *People v. Morgan*, 2025 IL 130626, ¶ 54. However, where the parties proceed by proffer, as they did in this case, the appellate court "stands in the same position as the circuit court and may therefore conduct its own independent review of the proffered evidence and evidence otherwise documentary in nature." *Id.* ¶ 51. Our review is thus *de novo*. *Id.* ¶ 54; see also *People v. Rios*, 2025 IL App (1st) 250950, ¶ 25 (applying this standard of review to an appeal from a decision to revoke pretrial release). This means we conduct the same analysis the circuit court would conduct, and we are not bound by its findings. *Lopez*, 2025 IL App (2d) 240709, ¶ 18.

¶ 36    Here, the evidence showed that defendant was charged with several additional felonies and one Class A misdemeanor while on pretrial release in this case. Specifically, she was charged with methamphetamine trafficking, theft, criminal damage to property, and cruel treatment of animals. Further, even after her release was revoked, she was charged with escape (a Class 3 felony) and resisting a police officer (a Class A misdemeanor). In the face of these numerous charges, we agree with the circuit court that no condition or combination of conditions of release would reasonably prevent defendant from committing additional Class A misdemeanors or felonies.

¶ 37    In addition, the charge of resisting a police officer in this case and the subsequent charges of escape and resisting a police officer likewise support the court's finding that defendant was a

flight risk and that no conditions of release would reasonably ensure her appearance at future court hearings. We find no error in the circuit court's decision.

¶ 38                                    III. CONCLUSION

¶ 39    For the foregoing reasons, we affirm the orders of the circuit court revoking defendant's pretrial release and denying her petition for relief.


¶ 40    Affirmed.