NOTICE
Decision filed 04/09/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 240120

NO. 5-24-0120

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 24-CF-40 |
| | ) | |
| MCKENZIE D. DAVIS, | ) | Honorable |
| | ) | Brett N. Olmstead, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE VAUGHAN delivered the judgment of the court, with opinion.
Justice McHaney concurred in the judgment and opinion.
Justice Welch specially concurred, with opinion.

**OPINION**

¶ 1　　Defendant timely appeals the trial court's order revoking his pretrial release pursuant to Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). For the following reasons we affirm the trial court's order.

¶ 2　　　　　　　　　　　　I. BACKGROUND

¶ 3　　On January 5, 2024, defendant was arrested for disorderly conduct related to a false 911 call. An order finding probable cause to detain was issued on January 6, 2024. On January 8, 2024, defendant was charged by information with one count of disorderly conduct in violation of section

1

26-1(a)(6) of the Criminal Code of 2012 (720 ILCS 5/26-1(a)(6) (West 2022)), a Class 4 felony. The information alleged that on January 5, 2024, defendant called "911" for the purpose of transmitting a false complaint, namely an emergency situation, when defendant knew, at the time the call was made, there was no reasonable ground for making the call and that the call could result in the emergency response of a public safety agency.

¶ 4    Defendant's arraignment was held on January 8, 2024. At that time, he was appointed counsel, pled not guilty, requested a jury trial, and was provided pretrial conditions of release. Those conditions included (1) attendance at future hearings, including one scheduled for January 16, 2024; (2) not violating any criminal statute of any jurisdiction; (3) notification of any change in address; (4) reporting to pretrial services; (5) random drug testing; and (6) prohibition from contacting either Sammy Davis or Donna Davis or being at their residence.

¶ 5    On January 9, 2024, a pretrial investigation report was filed with the court that revealed defendant was 27 years old, single, and lived with his parents. His mental health history included a diagnosis of anxiety for which he took medication. He had pending criminal charges for domestic battery/bodily harm incurred on January 4, 2024, along with charges of battery causing bodily harm and violation of a bail bond involving a family member on August 22, 2023. Prior convictions included criminal trespass to residence on July 13, 2022, and driving under the influence on March 22, 2016, for which he received conditional discharge for both convictions. He scored a 6 out 14 on the Virginia Pretrial Risk Assessment Instrument-Revised (VPRAI-R) equating to a level 3 out of 6 and a 14.9% recidivism rate.

¶ 6    On January 16, 2024, the State filed a petition to revoke pretrial release. In support, the State alleged that defendant, while on pretrial release, committed the offense of disorderly conduct,

2

a Class 4 felony, that was charged in case No. 24-CF-71. The petition further alleged that defendant was in violation of the court's no-contact orders regarding a protected address and persons.

¶ 7       The case proceeded on the previously scheduled January 16, 2024, hearing. At that time, defendant requested a continuance as to the State's petition to revoke pretrial release, and defendant was temporarily detained until the hearing set for January 17, 2024.

¶ 8       On January 17, 2024, the case proceeded on the State's petition to revoke. An amended pretrial services report provided the same information as above but also included newly filed charges of domestic battery and violation of pretrial release involving a family member. The VPRAI-R score remained the same. The State proffered that a no-contact order was issued after defendant was charged in August 2023 with battery after striking his father (case No. 23-CM-330). Defendant was later arrested for violating the no-contact order (case No. 23-CM-331). In case No. 24-DV-3, defendant struck his mother with a phone on December 30, 2023. Defendant's mother recanted the allegations. A no-contact order was issued, but the parents appeared at the arraignment and requested the no-contact order be removed. The instant case, case No. 24-CF-40, involved allegations that defendant made eight false, unnecessary calls to 911 on January 5, 2024. This culminated in defendant's mother calling 911 to report that defendant and his father were physically struggling. Champaign police located defendant and his father on the floor together, engaged in an altercation. Both parents denied defendant was aggressive with them, and defendant was charged with filing false reports. A no-contact order for the parents and their residence was issued. While on release, defendant was at his parents' residence, used alcohol to excess, and began calling 911 repeatedly, on January 13, 2024. The first two calls, made around 9:10 a.m., were nonsensical and claimed an emergency, initially in Idaho and then in Champaign, without stating what the emergency was. A third call was made at 9:13 a.m., and officers began efforts to locate

3

defendant. A fourth call was made at 9:50 a.m., at which time defendant provided his location. Defendant called again at 9:57 a.m., screaming and crying about no one believing him. Officers located defendant with a recently purchased bottle of alcohol. After a brief interaction, defendant was released, and he returned to the protected address and tried to enter. Officers returned to the protected address and were told defendant had been kicked out 30 minutes earlier. Defendant called 911 again at 5:19 p.m., reported he was at the protected address, and then laughed. He called again at 5:53 p.m., stating he was sorry and was walking to the Illinois Terminal. Defendant called again at 6:41 p.m., stating he was at the protected address. Officers located defendant at the protected address and took him into custody. The officers noted that defendant smelled of alcohol. The State indicated that officers were familiar with defendant's voice and speech pattern from the prior calls. As a result of his actions while on release, defendant was charged with disorderly conduct in case No. 24-CF-71.

¶ 9      Defense counsel argued that defendant obtained an evaluation at Rosecrance, was receiving drug and alcohol treatment, and had a counselor. Defendant's parents were at the hearing. Counsel stated that he spoke to them prior to the hearing, and both were requesting that the no-contact order be lifted. Defendant was the home healthcare provider for his mother. Counsel noted that defendant was on medication, had another appointment on February 1, 2024, worked as a live streamer, and lived his whole life with his family. The family was very supportive and wanted him to get the mental health treatment, as well as drug and alcohol treatment, he needed.

¶ 10     The State argued that this was a petition to revoke pretrial release and no other mechanism, but detention, was plausible based on the numerous orders already issued and the degenerating situation. Defendant had five pending cases. Two were felonies and one was a domestic battery.

4

The State argued that clear and convincing evidence showed that defendant continued to break the law and no combination of conditions would prevent that.

¶ 11 Defense counsel argued that defendant obtained a substance abuse evaluation as well as a mental health evaluation and was proceeding with treatment. Counsel argued that those things could not be accomplished immediately, and defendant was receiving treatment. Defendant's parents were supportive, did not want a no-contact order, and needed to be able to take him to appointments so he could continue his treatment.

¶ 12 The court stated that it considered the relevant factors and noted the burden on the State was to show that while defendant was on pretrial release for a felony or Class A misdemeanor, defendant was charged with a felony or Class A misdemeanor during his release. The court found the State proved that element by clear and convincing evidence. The pretrial release was ordered on January 8, 2024, in case No. 24-CF-40, and a second charge was filed five days later on January 13, 2024, in case No. 24-CF-71. The State was also required to show by clear and convincing evidence that no condition or combination of conditions of release would reasonably prevent defendant from being charged with a subsequent felony or Class A misdemeanor. The court found the State met that burden, noting that defendant's situation and the repeated offenses backed the court into a corner and there were no options left. The court reiterated defendant's charges levied on August 19, 2023, August 21, 2023, December 30, 2023, January 5, 2024, and now January 13, 2024. The court found that the support from the treatment and the family was not working and that nothing further could be done to prevent defendant from being charged with a subsequent felony or Class A misdemeanor. The court stated,

> "What's happened is his parents have tried really hard to manage him and his mental health and substance abuse struggles. They want to be there for him. They

5

want to be supportive. They just can't. It cannot be done. They *** don't have the ability to do it, and he doesn't have the ability or willingness to control his impulsive criminal conduct. There's no set of conditions the court could enter here."

The court granted the State's petition, revoked defendant's pretrial release, and advised defendant of his appeal rights. Defendant timely appealed. Ill. S. Ct. R. 604(h)(2) (eff. Dec. 7, 2023).

¶ 13                                    II. ANALYSIS

¶ 14    Pretrial release—including the conditions related thereto—is governed by statute. See Pub. Act 101-652, § 10-255 (eff. Jan. 1, 2023); Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023). Revocation of previously issued pretrial release conditions is addressed in section 110-6(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6(a) (West 2022)). Section 110-6(a) provides for revocation when "a defendant has previously been granted pretrial release under this Section for a felony or Class A misdemeanor" and "is charged with a felony or Class A misdemeanor that is alleged to have occurred during the defendant's pretrial release." *Id.* The issue of revocation can be raised by the court *sua sponte* or by the State's filing of a verified petition. *Id.* However, in addition to being charged with a subsequent felony or Class A misdemeanor on release, the "State shall bear the burden of proving, by clear and convincing evidence, that no condition or combination of conditions of release would reasonably ensure the appearance of the defendant for later hearings or prevent the defendant from being charged with a subsequent felony or Class A misdemeanor." *Id.* If the conditions of pretrial release are revoked, at each of defendant's subsequent appearances before the court, "the judge must find that continued detention under this Section is necessary to reasonably ensure the appearance of the defendant for later hearings or to

6

prevent the defendant from being charged with a subsequent felony or Class A misdemeanor." *Id.* § 110-6(j).

¶ 15 Our standard of review of pretrial release determinations is twofold. The trial court's factual findings are reviewed under the manifest weight of the evidence standard. *People v. Swan*, 2023 IL App (5th) 230766, ¶ 12. " 'A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented.' " *Id.* (quoting *People v. Deleon*, 227 Ill. 2d 322, 332 (2008)). We review the trial court's ultimate determination regarding the revocation of pretrial release for an abuse of discretion. *Id. ¶* 11. "An abuse of discretion occurs when the decision of the circuit court is arbitrary, fanciful, or unreasonable, or when no reasonable person would agree with the position adopted by the trial court." *Id.*; see *People v. Heineman*, 2023 IL 127854, ¶ 59. "[I]n reviewing the circuit court's ruling for abuse of discretion, we will not substitute our judgment for that of the circuit court, 'merely because we would have balanced the appropriate factors differently.' " *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 15 (quoting *People v. Cox*, 82 Ill. 2d 268, 280 (1980)).

¶ 16 Defendant's notice of appeal requests reversal of the trial court's order revoking his pretrial release. Although black letter law is typed below nearly every issue listed on the standard form notice of appeal, it appears that only one of the grounds is actually "checked" as an issue. The issue "checked" claims the court erred in its determination that no condition, or combination of conditions, would reasonably ensure defendant's appearance at later hearings or prevent defendant from being charged with a subsequent felony or Class A misdemeanor. In support, the typed language below the issue stated the following:

"The Pretrial Fairness Act is to 'be liberally construed to effectuate the purpose of relying on pretrial release by nonmonetary means to reasonably ensure an eligible person's appearance in court, the protection of the safety of any other person or the community, that the person will not attempt or obstruct the criminal justice process, and the person's compliance with all conditions of release, while authorizing the court, upon motion of a prosecutor, to order pretrial detention of the person . . . when it finds clear and convincing evidence that no condition or combination of conditions can reasonably ensure the effectuation of these goals' 725 ILCS 5/110-2(e). In this case, the Court erred in its determination because there are conditions set forth in 725 ILCS 5/110-10(b) which would effectuate the above goals."

¶ 17    On February 29, 2024, defendant's appointed counsel on appeal, the Office of the State Appellate Defender (OSAD), filed a "Notice Filed in Lieu of Rule 604(h) Memorandum." The notice claims that defendant's appeal was timely filed and jurisdiction lies with this court. It further stated, "After thoroughly reviewing the record on appeal, including the arguments made in the trial court and presented in the notice of appeal, Defendant-Appellant has determined that a Rule 604(h) memorandum is not necessary in this case."[1]

¶ 18    Nothing in defendant's notice of appeal—other than the checked issue—addresses the basis for which the revocation occurred. Further, OSAD—which stated it thoroughly reviewed, *inter alia*, the arguments "presented in the notice of appeal"—declined an opportunity to present

---

[1]Due to defendant's notice of appeal providing language related to each potential issue on appeal, and OSAD failing to clarify which issues were relevant or provide supporting argument for any issue, the State's Illinois Supreme Court Rule 604(h) (eff. Dec. 7, 2023) memorandum filed on March 28, 2024, addressed the issues potentially raised in defendant's ambiguous notice of appeal as well as the basis of the trial court's revocation of defendant's pretrial release. Defendant's ambiguity regarding the issues requested for review is not well taken as it needlessly increased the State's efforts to respond to defendant's notice of appeal in addition to wasting this court's valuable judicial resources.

an argument for defendant that would actually, and more specifically, address defendant's alleged claim of error.

¶ 19 OSAD's classification of the irrelevant statements typewritten in the notice of appeal as "argument" is a gross misrepresentation of the statements provided therein. Further, for this court to find those statements merely "unpersuasive" would insufficiently describe the inappropriateness and irrelevancy of the typewritten words in the notice of appeal. As such, we take this opportunity to remind both trial counsel and appointed counsel of their ethical obligations.

¶ 20 The ethical obligations include the following:

> "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing *so that is not frivolous, which includes a good-faith argument* for an extension, modification[,] or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established."

(Emphasis added.) Ill. R. Prof'l Conduct (2010) R. 3.1 (eff. Jan. 1, 2010).

Similarly, "[a] lawyer shall not *** knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists." Ill. R. Prof'l Conduct (2010) R. 3.4(c) (eff. Jan. 1, 2010).

¶ 21 One reason to review and consider these ethical rules is because "[i]t is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another." Ill. R. Prof'l Conduct (2010) R. 8.4(a) (eff. Jan. 1, 2023). It is also "professional misconduct for a lawyer to: *** engage in conduct involving dishonesty *** or misrepresentation" (Ill. R. Prof'l Conduct

9

(2010) R. 8.4(c) (eff. Jan. 1, 2023)) or "engage in conduct that is prejudicial to the administration of justice" (Ill. R. Prof'l Conduct (2010) R. 8.4(d) (eff. Jan. 1, 2023)). "A lawyer who knows that another lawyer has committed a violation of Rule 8.4(b) or Rule 8.4(c) shall inform the appropriate professional authority." Ill. R. Prof'l Conduct (2010) R. 8.3(a) (eff. Jan. 1, 2010). Even if no question regarding honesty, trustworthiness, or fitness is raised, a judge knowing that a lawyer has violated the Illinois Rules of Professional Conduct of 2010 is required "take appropriate action." Ill. Code Jud. Conduct (2023), Canon 2, R. 2.15(D) (eff. Jan. 1, 2023).

¶ 22   We presume the action, or lack of action, taken in this case while representing the defendant was made after trial counsel and appellate counsel consulted with defendant about the proposed defense. However, even if defendant approved of such action in preparing the notice of appeal, or inaction by appellate counsel, we cannot condone either action as they are contrary to well-established law requiring argument on appeal as seen in the supreme court rules.

> "The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Ill. S. Ct. R. 137(a) (eff. Jan. 1, 2018).

¶ 23   Our supreme court previously stated,

> "What is defense counsel to do after he or she determines that defendant's petition is frivolous? Is counsel to stand mute at all subsequent proceedings? How can counsel, ethically, 'present the petitioner's contentions' when counsel *knows* those

10

contents are frivolous? Obviously, the answer is counsel cannot." (Emphasis in original.) *People v. Greer*, 212 Ill. 2d 192, 206 (2004).

The court further quoted the following United States Supreme Court language, " 'Neither paid nor appointed counsel may deliberately mislead the court with respect to either the facts or the law, or consume the time and the energies of the court or the opposing party by advancing frivolous arguments.' " *Id.* at 207 (quoting *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 436 (1988)).

¶ 24 Such ethical obligations have no limitation. See *People v. Mancilla*, 2024 IL App (2d) 230505, ¶ 32. After noting the increased workloads on the public and appellate defenders, the court in *People v. Mancilla* stated with regard to pretrial release claims, "[P]resenting baseless appeals only further burdens the justice system unnecessarily, delaying review of other cases with claims based in law and fact." *Id.* The *Mancilla* court held that

"in appeals of detention orders under the Code, appellate attorneys appointed to represent the defendant under the Code are required to determine whether a defendant's claims have arguable merit; if, in their opinion, they do not, counsel cannot in good faith file or continue to pursue such a frivolous appeal or claim within an appeal. [Citations.]

\*\*\* Nevertheless, attorneys' ethical duties include (1) pursuing only meritorious claims, (2) dealing with candor toward the court, and (3) when appropriate, withdrawing claims that are without merit. This may be accomplished by filing an amended notice of appeal or simply by including within a memorandum on appeal pursuant to Rule 604(h) (or within a notice filed in lieu of such a memorandum) a concise statement indicating that counsel is withdrawing one or

11

more of the claims identified in the notice of appeal that was filed in the circuit court." *Id.* ¶¶ 34-35.

¶ 25    "An attorney, whether appointed or paid, is therefore under an ethical obligation to refuse to prosecute a frivolous appeal." *McCoy*, 486 U.S. at 436.

> " 'A lawyer, after all, has no duty, indeed no right, to pester a court with frivolous arguments, which is to say arguments that cannot conceivably persuade the court, so if he believes in good faith that there are no other arguments that he can make on his client's behalf he is honor-bound to so advise the court and seek leave to withdraw as counsel' " *Id.* (quoting *United States v. Edwards*, 777 F.2d 364, 365 (7th Cir. 1985)).

The proper procedure for appointed counsel to request leave to withdraw is well established. See *Ellis v. United States*, 356 U.S. 674, 675 (1958) (*per curiam*); *Anders v. California*, 386 U.S. 738, 744 (1967) ("Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw."). Similarly, trial counsel has a duty under these same principles, to only present arguments for claims with merit and omit statements that lack merit when preparing the notice of appeal.

¶ 26    Here, defendant's notice of appeal contained typewritten language in the spaces under each potential issue for review. Upon closer review, however, the typewritten words provide no specific argument and merely cited what defendant claimed were applicable sections of the Code. This court has not hesitated to dismiss an appeal when defendant's appointed counsel attempted to shift their responsibility to present an argument onto this court. See *People v. Burke*, 2024 IL App (5th) 231167, ¶¶ 21-33; *People v. Duckworth*, 2024 IL App (5th) 230911, ¶¶ 7-8. Moreover, all but one of the sections for which typewritten language was provided were completely inapplicable when

12

considered in conjunction with the hearing. Accordingly, those sections will not be addressed. We will, however, review the one issued "checked," although such analysis only demonstrates the lack of any meritorious argument associated therewith.

¶ 27 This issue claimed that the trial court erred in determining that no condition, or combination of conditions, would reasonably prevent defendant from being charged with a subsequent felony or Class A misdemeanor. As noted above, revocation of previously issued pretrial release conditions requires evidence that defendant was charged with a felony or Class A misdemeanor while on pretrial release for charges stemming from either a felony or Class A misdemeanor. Here, the evidence revealed that defendant was charged with disorderly conduct listed as a Class 4 felony on January 8, 2024, for which defendant received pretrial release conditions. The evidence also revealed that defendant was subsequently charged with disorderly conduct in violation of section 26-1(a)(1) of the Criminal Code of 2012 (720 ILCS 5/26-1(a)(1) (West 2022)), classified as a Class C misdemeanor, and a violation of pretrial release/family member in violation of section 32-10(b) (*id.* § 32-10(b)), classified as a Class A misdemeanor on January 13, 2024. No meritorious argument can be made that this element of the revocation statute was not made.

¶ 28 The second element requires the State to prove that no condition, or combination of conditions, is available that would prevent defendant from being charged with another felony or Class A misdemeanor. Here, the State argued, and the pretrial investigation report substantiated, defendant's most recent criminal history that began in August 2023. This evidence revealed that defendant was charged with domestic violence against his father in August 2023, and after receiving pretrial release conditions, was charged with violating those conditions of release two days later. Thereafter, defendant was charged with domestic violence against his mother on January 4, 2024, and was again released on pretrial conditions. On January 8, 2024, defendant was

charged with the Class 4 felony of disorderly conduct and was released with pretrial conditions. Those conditions included no contact with his parents and prohibited defendant from being at their residence. Despite these requirements, as well as the requirement of not breaking any other statute, defendant was charged with domestic violence involving his father at the protected address and disorderly conduct again on January 13, 2024.

¶ 29 The evidence revealed that defendant was provided four opportunities to remain free from incarceration with pretrial release conditions, and each time, defendant violated the terms of his pretrial release. Further, the evidence revealed that the incidents of domestic violence were escalating in severity. The first incident involved defendant striking his father. The second incident involved defendant striking his mother—who required home healthcare services—with a phone. The third incident involved defendant and his father physically struggling when police were called and remained "engaged in an altercation" on the floor of the protected residence when Champaign police arrived.

¶ 30 The evidence also revealed that defendant had always lived with his parents. There was no evidence that defendant had anywhere else to reside if he could not live with them. Past practice confirmed that issuing a no-contact order and/or prohibiting defendant from being at his parents' residence was equally unavailing. Defendant continuously ignored those pretrial release requirements resulting in subsequently being charged with felony or Class A misdemeanor offenses related to those incidents. Accordingly, a pretrial release condition consisting of home detention or Global Positioning System (GPS) monitoring had no merit.

¶ 31 The obviousness of the situation is further seen by defense counsel's failure to present any argument regarding possible conditions of pretrial release in this situation that would ensure defendant would not commit future offenses and abide by the court's orders. Nor is the possibility

14

of any specific condition of release contended in the notice of appeal. Here, unequivocally, the trial court's findings of a subsequent charge and lack of any condition to prevent another felony or Class A misdemeanor are not against the manifest weight of the evidence and the court's revocation of pretrial release was not an abuse of discretion.

¶ 32 This court is well aware of the goals of the amendments by the Act and presumption presented in section 110-2(e); however, the section has little relevance when the issue involves revocation of pretrial release. In order to revoke pretrial release conditions, the defendant must have committed another offense while on pretrial release. In this situation, the presumption set forth in section 110-2(e) was previously extended to the defendant four times.

¶ 33 Given this evidence, the trial court's findings, and ultimate disposition, as well as the standard of review on appeal, we find this appeal was frivolous and that no meritorious argument could be presented. Accordingly, we affirm the trial court's order revoking defendant's pretrial conditions. Given the lack of any relevant argument on appeal and ethical obligations that preclude lawyers from misrepresenting facts to this tribunal or proceeding with frivolous appeals, we respectfully remind trial counsel and appointed counsel of their ethical responsibilities to both their client and this tribunal.

¶ 34                                III. CONCLUSION

¶ 35 For the reasons stated herein, the trial court findings were not against manifest weight of the evidence and its ultimate disposition was not an abuse of discretion. Therefore, we affirm the trial court's order revoking defendant's pretrial release.

¶ 36 Affirmed.

¶ 37 JUSTICE WELCH, specially concurring:

¶ 38    I specially concur with my colleagues. I would suggest that the entire notice of appeal be considered, including those arguments where the box is not checked, as that is a mere formality and the writing underneath the form language demonstrates that the form language was considered. This in no way implies that the language included under each section contains a persuasive argument, only that it should be addressed in the majority opinion.

¶ 39    For this reason, I specially concur.

_People v. Davis_, 2024 IL App (5th) 240120

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Champaign County, No. 24-CF-40; the Hon. Brett N. Olmstead, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Carolyn R. Klarquist, and Ann B. McLennan, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Patrick Delfino and David J. Robinson, of State's Attorneys Appellate Prosecutor's Office, of Springfield, for the People. |