NOTICE

Decision filed 12/23/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 250756-U

NO. 5-25-0756

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 23-CF-1409 |
| | ) | |
| WILLIAM AYRES, | ) | Honorable |
| | ) | Brett N. Olmstead, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MOORE delivered the judgment of the court.
Justices McHaney and Bollinger concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's orders granting the State's motion to revoke defendant's pretrial release and denying defendant's motion for relief where the evidence supported the court's finding that no conditions of release would reasonably prevent defendant from being charged with subsequent felonies or Class A misdemeanors.

¶ 2    Defendant, William Ayres, appeals orders of the Champaign County Circuit Court granting the State's motion to revoke pretrial release and denying defendant's motion for relief. He argues that the evidence did not support the court's finding that no conditions of release were adequate. We affirm.

¶ 3                               I. BACKGROUND

¶ 4    On November 13, 2023, the State charged defendant by information with one count each of armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2022)), unlawful possession of a weapon

1

by a felon (*id.* § 24-1.1(a)), and unlawful possession of a weapon by a felon/subsequent (*id.* § 24-1.1(e)). The information alleged that on November 8, 2023, defendant knowingly possessed a Taurus G2C handgun and that he was previously convicted of unlawful possession of a weapon by a felon.[1]

¶ 5     On the same day, the State filed a verified petition to deny pretrial release, asserting that (1) the proof was evident and the presumption great that defendant committed a detainable offense and (2) defendant posed a real and present threat to the safety of the community. The circuit court denied the State's petition after a hearing on November 14, 2023. The court entered a pretrial release order imposing conditions of release. In pertinent part, defendant was required to appear at court hearings as ordered and to refrain from violating any criminal statutes.

¶ 6     On May 19, 2025, the State filed a Petition to Revoke Pretrial Release. In the petition, the State alleged that defendant was placed on pretrial release with a condition that he not violate criminal statutes. It alleged that on March 16, 2025, while on pretrial release, defendant committed additional offenses, including home invasion, domestic battery with a prior domestic battery conviction, and criminal trespass to residence, all of which are felonies. The State further alleged that on May 16, 2025, defendant committed the additional offenses of unlawful possession of a weapon by a felon (a felony) and obstructing a peace officer (a Class A misdemeanor).

¶ 7     The petition to revoke indicated that the March incident led to charges in Champaign County case No. 25-CF-322 and the May incident led to charges in Champaign County case No. 25-CF-594. The State summarized the facts underlying the charges in the first case as follows: Defendant entered the home of Jasmine Taylor-Gwin, a household or family member, without

_____

[1]On November 30, 2023, a grand jury returned a superseding indictment containing charges identical to those in the information.

authority, knowing one or more persons were present inside the residence. He caused injury to Taylor-Gwin by grabbing her neck, and he made contact of an insulting or provoking nature by grabbing her neck and pulling her hair. The State summarized the facts underlying the charges in case No. 25-CF-594 as follows: Defendant possessed a Ruger LPC pistol, and he produced a firearm and refused to allow police to take him into custody.

¶ 8    Finally, the State alleged that no condition or combination of conditions of release would reasonably ensure defendant's appearance at subsequent hearings or prevent him from being charged with a subsequent felony or Class A misdemeanor.

¶ 9    The State filed a pretrial investigation report (PTI) with the court the following day. The report included the following information provided by defendant: he was a lifelong resident of Champaign County whose entire family lived in the area; he had two children with a third on the way; he was unemployed and looking for work; and he had no history of drug abuse or mental health issues. The report noted that this information could not be verified.

¶ 10    The PTI indicated that defendant scored 9 of 14 on the Virginia Pretrial Risk Assessment Instrument—Revised (VPRAI-R). This placed him at level five of six for risk of violating the terms of pretrial release.

¶ 11    The PTI also included a list of defendant's pending charges and prior convictions. In addition to the charges in this case, defendant faced charges of home invasion (720 ILCS 5/19-6(a)(2) (West 2024)), domestic battery (*id.* § 12-3.2(a)(1)), and criminal trespass to residence (*id.* § 19-6(a)(2)) in case No. 25-CF-322.[2] His criminal history included a 2021 unlawful conviction for possession of a firearm by a felon (720 ILCS 5/24-1.1(a) (West 2016)), a 2014 conviction for

---

[2]As mentioned earlier, defendant also faced charges of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2024)) and obstructing a peace officer (*id.* § 31-1(a)(2)) in case No. 25-CF-594. However, the PTI, which was apparently prepared for case No. 25-CF-322, does not list those charges.

aggravated robbery with a firearm (720 ILCS 5/18-1(b)(1) (West 2014)), a 2012 conviction for unlawful possession of a firearm by a felon (720 ILCS 5/24-1(a) (West 2012)), and 2011 convictions for obstruction of justice (720 ILCS 5/31-4(a) (West 2010)) and domestic battery/bodily harm (*id.* § 12-3.2(a)(1)).

¶ 12 On May 20, 2025, the circuit court held a hearing on the State's petition to revoke pretrial detention. At the same hearing, the court also considered verified petitions to deny pretrial release in case Nos. 25-CF-322 and 25-CF-594. The court noted at the outset that it was taking judicial notice of the PTI, the charges pending in all three cases, and all court orders and docket entries in all three cases. The court stated, however, that it did not consider the pending charges "as in any way self-proving."

¶ 13 The court next asked the State to present the factual bases underlying the charges in all three cases. Although the prosecutor referred to police reports in responding, those reports were not entered into evidence and do not appear in the record before us. The prosecutor first described the November 8, 2023, incident at issue in this case. He told the court that when police conducted a raid pursuant to a parole arrest warrant for defendant, they found a firearm on top of a pile of laundry and eventually found defendant hiding in the basement. Before transport, defendant asked for his cell phone, which was found near the gun.

¶ 14 The prosecutor next discussed the March 16, 2025, incident at the home of Jasmine Taylor-Gwin that led to the charges in case No. 25-CF-322. He noted that defendant previously resided in Taylor-Gwin's apartment, but he moved out before the incident occurred. According to police reports, Taylor-Gwin told police defendant called her that evening asking to retrieve some of his belongings from her apartment. She told him she was not home and that she would call him when she got home. Approximately an hour later, while Taylor-Gwin was outside taking out the trash,

4

defendant approached her and accused her of "playing games." When she went into her apartment and attempted to close the door behind her, defendant forced his way inside. Taylor-Gwin told police that she tried to reach her phone, but defendant grabbed her by her hair and pulled her backwards. She managed to get loose and retrieve her phone, but defendant took it from her so she could not call police. At one point, defendant grabbed Taylor-Gwin by the neck. Eventually, she managed to escape and called the police. Taylor-Gwin told police that she was not injured, but her face hurt. Police responding to her call observed a scratch on her neck, defendant's jacket in her kitchen, and damage to the window trim on the front door where defendant forced his way in.

¶ 15    Lastly, the prosecutor provided the factual basis underlying the charges pending in case No. 25-CF-594. He told the court that, according to the police report, officers executing an arrest warrant for defendant on May 16, 2025, had to force entry because no one answered the door. They searched the house and found defendant hiding in an upstairs bedroom closet brandishing a firearm. The officers fired a "less-than-lethal round" at defendant, then left the bedroom and began negotiations with defendant. This led to a 1½ hour standoff, during which defendant stood at the top of the staircase, armed. During the standoff, he threatened to kill himself and asked to see his family. The police report indicated that police recovered a black Ruger LPC pistol when they searched the house.

¶ 16    In response, defense counsel highlighted information from police reports related to the charges in case Nos. 25-CF 322 and 25-CF-594. Regarding case No. 25-CF-322, she noted that defendant's sister, Unique Ayres, was at Taylor-Gwin's home on March 16, 2025, and she "tells a very different story of what happened." As to the charges involved in case No. 25-CF-594, counsel noted that the firearm was recovered during a search pursuant to a warrant issued after defendant's

5

arrest. In addition, she emphasized that although defendant admitted to hiding in the closet, he denied being armed at the time.

¶ 17   In its argument, the State emphasized that defendant had two convictions for unlawful possession of a weapon prior to the events at issue in this case. The State argued that the conditions of pretrial release imposed upon defendant in this case "did not work." The State further argued that evidence of the battery against Jasmine Taylor-Gwin in case No. 25-CF-322 and defendant's possession of a gun in case No. 25-CF-594 demonstrated dangerousness. Finally, the State asserted that no conditions of release would reasonably protect the community from defendant.

¶ 18   Defendant noted that he was on pretrial release with conditions in case No. 23-CF-1409 for 18 months before having any contact with police. He argued that this "cuts against the idea that no conditions would be effective."

¶ 19   In ruling from the bench, the court explained that for revocation of pretrial release, the State must show two things: (1) the existence of a new charge or charges for Class A misdemeanors or felonies occurring while defendant is on pretrial release and (2) clear and convincing evidence that no condition or set of conditions can reasonably ensure that defendant will appear at future hearings and will not commit additional offenses. The court found the mere fact that charges were pending in case Nos. 25-CF-322 and 25-CF-594 sufficient to satisfy the first requirement. Addressing the second requirement, the court noted that flight risk and failure to attend hearings was not an issue. Although defendant did fail to attend a hearing in this case in April, he had a history of regularly attending hearings. The court emphasized, however, that defendant "has spent his entire adult life either on pretrial release or in prison, or on probation, or on parole for serious offenses that all have a common theme to them, guns." The court thus concluded that the State proved by clear and convincing evidence that no condition or set of conditions would reasonably

6

ensure that defendant would not be charged with additional felonies or Class A misdemeanor offenses.

¶ 20     The court entered an order revoking defendant's pretrial release that same day. In the order, the court listed five additional charges filed against defendant while he was on pretrial detention, one Class A misdemeanor and four felonies. Further, the court expressly found by clear and convincing evidence that no condition or combination of conditions of release would reasonably prevent defendant from committing additional felonies or Class A misdemeanors.

¶ 21     On September 11, 2025, defendant filed a motion for relief pursuant to Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024). He argued that the State failed to prove by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of the community. This is so, he contended, "because he can be safely monitored by the Office of Statewide Pretrial Services on electronic home detention." Defendant filed identical motions for relief in case Nos. 25-CF-322 and 25-CF-594. The motion did not directly address the question of whether conditions of release could reasonably prevent defendant from committing additional offenses.

¶ 22     On the same day, the circuit court held a hearing on the motions for relief filed in all three cases. The court began the hearing by taking judicial notice of the orders and docket entries in all three cases and the proceedings in the May 20 hearing. The court also noted that it was considering the PTI previously filed.

¶ 23     Defendant argued that the court's detention orders were incorrect when entered because the court erred in finding that there were no conditions it could impose to mitigate the real and present threat posed by defendant. He asserted that the court should have considered conditions such as electronic home monitoring.

7

¶ 24    Ruling from the bench, the circuit court first considered whether the orders at issue were correct when entered. With respect to the detention orders entered in case Nos. 25-CF-322 and 25-CF-594, the court framed the question before it as whether there were available options to mitigate the threat that the court failed to consider. The court answered that question in the negative, noting that conditions such as GPS monitoring or home detention would not be adequate for the reasons stated in its previous order and emphasizing that in May 2025 defendant was found holding a pistol when "there were already legal requirements in place" preventing him from possessing a gun.

¶ 25    With respect to this case, however, the court explained that a different standard applied to the order revoking defendant's pretrial release and noted that the parties did not address that standard in their arguments.[3] The court thus found that any such arguments were forfeited.

¶ 26    The court turned its attention to whether continued detention was necessary. See 725 ILCS 5/110-6(j) (West 2024); see also 725 ILCS 5/110-6.1(i-5) (West 2024). Defense counsel informed the court that defendant was involved in juvenile court proceedings concerning his youngest child, born in January 2025. Counsel noted that to prevent the termination of his parental rights in those proceedings, defendant was required to complete classes available in the community. Counsel also offered into evidence an email from defendant's fiancée, Alize Markham.

¶ 27    A printout of Markham's email was entered into evidence as Defendant's Exhibit 1. In it, Markham indicated that she had known defendant for three years and found him to be "caring, dependable, and hardworking." She opined that the pending charges did not reflect the person she knew. Markham described defendant as a "devoted father who is motivated to rebuild his life for

---

[3]The question in ruling on a petition to revoke pretrial release is not whether conditions of release can reasonably mitigate a real and present threat, but rather, whether conditions of release can reasonably prevent a defendant from committing additional felonies or Class A misdemeanors. See *People v. Davis*, 2024 IL App (5th) 240120, ¶ 28; 725 ILCS 5/110-6(a) (West 2024).

8

the sake of the children." She stated, "He deeply regrets his involvement in this matter and is committed to learning from his mistakes."

¶ 28 Defendant argued that conditions were available to the court that would mitigate any threat to community safety and prevent him from committing additional offenses, although he did not elaborate. He further argued that his pending juvenile court case provided him with an added incentive to comply with any conditions the court imposed. The State argued that the defendant had "a long history of violating court orders whether it be parole or mandatory supervised release [or] pretrial release." As such, the State contended, the added incentive of a pending juvenile court case would not do much to mitigate the threat.

¶ 29 In ruling, the court first explained that the issue before it in case Nos. 25-CF-322 and 25-CF-594 was whether continued detention was necessary to mitigate the real and present threat to the community, while the question in this case was whether continued detention was necessary to prevent defendant from committing additional Class A misdemeanors or felonies. The court noted that, as a practical matter, there was "a lot of overlap between these two standards," because if defendant were charged with any new offenses, they would "involve most likely something dangerous."

¶ 30 The court rejected defendant's contention that the added incentive for compliance provided by his pending juvenile court case would make a difference. The court noted that the offenses at issue in the two newer cases were committed after the child was born, when defendant was aware of his parental responsibility. The court emphasized that defendant was already on pretrial release in this case when he committed those offenses. The court stated, "I fail to see how the added incentive can—tips the scale here given all of the incentive he had before and in the past when he's chosen to commit gun crimes."

¶ 31 Addressing Markham's email, the court acknowledged that Markham knew defendant well and that she saw "a really good side of this man." The court noted, however, that at the same time, defendant committed the offenses at issue in all three cases. The court stated, "The problem is the Court has struggled to find any set of conditions that can ever be successful in keeping a gun out of his hand."

¶ 32 The court entered a continued detention order on the same date, September 11, 2025. The court expressly found that continued detention was necessary to avoid a real and present threat. In summarizing its findings, the court again stated that defendant "has shown a complete unwillingness to abide by parole, pretrial release conditions, and sentencing orders." The court further noted that neither Markham's letter in support of defendant nor the added incentive for compliance resulting from the pending juvenile court case were enough to demonstrate that detention was no longer necessary. The court reiterated that the conduct at issue in this case occurred during the time Markham knew defendant, and some of the relevant conduct occurred after defendant's youngest child was born.

¶ 33 On September 18, 2025, defendant filed a timely appeal pursuant to Illinois Supreme Court Rule 604(h)(1)(iii) (eff. Apr. 15, 2024).

¶ 34                                  II. ANALYSIS

¶ 35 On appeal, defendant filed a notice in lieu of a memorandum. As such, his motion for relief serves as his argument on appeal. Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). As discussed previously, defendant's only argument in that motion was that the State failed to provide clear and convincing evidence that no condition or combination of conditions of release could mitigate any real and present threat to the community. However, the question in proceedings on a petition to revoke pretrial release is whether any condition or set of conditions of release will prevent

10

defendant from committing additional felonies or Class A misdemeanors. See *Davis*, 2024 IL App (5th) 240120, ¶¶ 14, 28; 725 ILCS 5/110-6(a) (West 2024). Because defendant did not address that question in his motion for relief or in a memorandum filed with this court, he has waived consideration of the question. See Ill. S. Ct. R. 604(h)(2), (h)(7) (eff. Apr. 15, 2024) (providing that issues not raised in defendant's motion for relief are deemed waived on appeal and that "the form of the appellant's arguments must contain sufficient detail to enable meaningful appellate review, including the contentions of the appellant and the reasons therefore"). Moreover, waiver aside, we find no error in the circuit court's decision.

¶ 36    All criminal defendants are presumptively eligible for pretrial release, even those charged with violent offenses. *People v. Lopez*, 2025 IL App (2d) 240709, ¶ 20; see also 725 ILCS 5/110-2(a) (West 2024). Pretrial release may only be denied "in certain statutorily limited situations." *Lopez*, 2025 IL App (2d) 240709, ¶ 15 (citing 725 ILCS 5/110-6.1(e) (West 2022)). Pertinent here, the circuit court may deny pretrial release after a hearing on the State's verified petition where (1) the proof is evident or the presumption great that the defendant has committed a detainable offense, (2) the defendant poses a real and present threat to the safety of any individual(s) or to the community, and (3) no condition or combination of conditions would mitigate the threat. *People v. Miller*, 2024 IL App (1st) 240588, ¶ 24 (citing 725 ILCS 5/110-6.1(e)(1)-(3) (West 2022)). The State bears the burden of proving all three requirements by clear and convincing evidence. *People v. Horne*, 2023 IL App (2d) 230382, ¶ 16.

¶ 37    After a defendant has been granted pretrial release, the circuit court may revoke release if defendant is charged with a felony or a Class A misdemeanor based on conduct alleged to have occurred while defendant was on pretrial release. *People v. Davis*, 2024 IL App (5th) 240120, ¶ 14 (citing 725 ILCS 5/110-6(a) (West 2022)). Although the court can consider revocation either

11

*sua sponte* or upon verified petition filed by the State, the court must hold a hearing at which the State bears the burden of proving by clear and convincing evidence that no condition or combination of conditions of release will reasonably ensure that defendant will appear for future hearings and/or will not commit subsequent felonies or Class A misdemeanors. *Id.* (citing 725 ILCS 5/110-6(a) (West 2022)).

¶ 38    Our standard of review on appeal depends on the nature of the evidence presented at the hearing. Where the parties present the testimony of live witnesses, we review the circuit court's decision to determine whether it is against the manifest weight of the evidence. *People v. Morgan*, 2025 IL 130626, ¶ 54. However, where the parties proceed by proffer, as they did in this case, the appellate court "stands in the same position as the circuit court and may therefore conduct its own independent review of the proffered evidence and evidence otherwise documentary in nature." *Id.* ¶ 51. Our review is thus *de novo*. *Id.* ¶ 54; *People v. Rios*, 2025 IL App (1st) 250950, ¶ 25 (applying this standard of review to an appeal from a decision to revoke pretrial release). This means we conduct the same analysis the circuit court would conduct, and we are not bound by its findings. *Lopez*, 2025 IL App (2d) 240709, ¶ 18.

¶ 39    Here, there is no dispute that defendant was charged with four felonies and one Class A misdemeanor in two separate cases based on conduct alleged to have occurred while he was on pretrial release in this case. The only question, then, is whether the State proved by clear and convincing evidence that no set of conditions would reasonably prevent him from committing additional felonies or Class A misdemeanors. The record demonstrates that, in addition to committing multiple new offenses while on pretrial release in this case, defendant has a substantial criminal history, including multiple charges of illegally possessing a firearm despite prior felony convictions. In addition, the record reveals that defendant's score of nine on the VPRAI-R

12

assessment placed him in a high-risk category for violating conditions of pretrial release. In view of these circumstances, we agree with the circuit court that no conditions or combination of conditions of release can reasonably prevent defendant from committing additional felonies or Class A misdemeanors. Defendant has demonstrated that he is unlikely to comply with any conditions the court might impose. We find no error.

¶ 40                                             III. CONCLUSION

¶ 41    For the foregoing reasons, we affirm the orders of the circuit court revoking the defendant's pretrial release and denying his motion for relief.


¶ 42    Affirmed.