NOTICE
Decision filed 01/16/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250823-U

NOS. 5-25-0823, 5-25-0826, cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Effingham County. |
| | ) | |
| v. | ) | Nos. 25-CF-177, 25-CF-175 |
| | ) | |
| HEATHER M. LINDEMANN, | ) | Honorable |
| | ) | Bryan M. Kibler, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BARBERIS delivered the judgment of the court.
Justices Vaughan and Sholar concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's orders granting the State's motions to revoke defendant's pretrial release and denying defendant's motions for relief where the record contains clear and convincing evidence that no conditions of release would reasonably ensure defendant's appearance at future hearings or prevent her from being charged with subsequent felonies or Class A misdemeanors.

¶ 2    Defendant, Heather M. Lindemann, was charged with multiple offenses in two separate cases (Effingham County case Nos. 25-CF-175 and 25-CF-177), all of which were based upon conduct alleged to have occurred while she was on pretrial release in another case. In both cases, the circuit court of Effingham County entered orders revoking defendant's pretrial release and denying her subsequent motions for relief. Defendant filed a separate appeal in each case (Nos. 5-25-0823 and 5-25-0826). On our own motion, this court ordered the two appeals consolidated for decision only. We now affirm the circuit court's rulings.

1

¶ 3                                    I. BACKGROUND

¶ 4        On June 26, 2025, the State filed an information in case No. 25-CF-175 charging defendant

with one count each of methamphetamine trafficking (720 ILCS 646/56(b) (West 2024), delivery

of more than 100 grams but less than 400 grams of methamphetamine (*id.* § 55(a)(1)), and unlawful

possession of more than 100 grams but less than 400 grams of methamphetamine (*id.* § 60(a),

(b)(4)). The offenses were alleged to have occurred on January 27, 2025. The circuit court issued

a warrant for defendant's arrest on those charges the same day.

¶ 5        On June 30, 2025, the State filed a two-count information in case No. 25-CF-177 charging

defendant with one count of theft (720 ILCS 5/16-1(a)(4)(A) (West 2024)) and one count of

criminal damage to property (*id.* § 21-1(a)(1)). Count I alleged that defendant stole a collection of

dolls belonging to Tami Hutchison valued at over $10,000 but under $100,000. Count II alleged

that defendant caused between $500 and $10,000 worth of damage to the same dolls.

¶ 6        On June 30, 2025, defendant came before the court on a petition to revoke her pretrial

release in another pending matter (Effingham County case No. 24-CF-121). At that hearing, the

State proffered the factual bases underlying the charges at issue in this appeal, which formed the

basis of the State's request to revoke pretrial release. First, the State described the events at issue

during a January 2025 traffic stop, which ultimately led to the charges in case No. 25-CF-175. The

State informed the court that during the course of the stop, defendant and her co-defendant were

given *Miranda* warnings and subsequently admitted that they went to Missouri to purchase

approximately 109 grams of methamphetamine.

¶ 7        With respect to the charges involved in case No. 25-CF-177, the State told the court that

Tami Hutchison reported the theft of Madame Alexander dolls valued at approximately $100,000

from a storage unit and that two anonymous callers to Crime Stoppers reported that defendant and

Cody Sapp were seen stealing items from storage units in the Altamont area. The callers also mentioned that defendant and Sapp attempted to sell items stolen from the storage units, including porcelain dolls. The State told the court that when officers executed a warrant for defendant's arrest, they saw dolls in plain view. After being arrested and read her *Miranda* rights, defendant provided officers with the locations of additional dolls. Subsequently, officers executed a search warrant and discovered "hundreds" of dolls, some of which had "significant damage." The circuit court granted the State's petition to revoke defendant's pretrial release in case No. 24-CF-121. The court did not enter detention orders in case Nos. 25-CF-175 or 25-CF-177 at that time.

¶ 8    On July 1, 2025, the State filed an information adding a third count to case No. 25-CF-177. The new count III charged defendant with cruel treatment of animals (510 ILCS 70/3.01 (West 2024)). It alleged that on June 30, 2025, defendant caused a dog to be emaciated due to a lack of proper care. On July 10, 2025, the State filed a petition for forfeiture of six dogs belonging to defendant. The petition alleged that the dogs were taken into protective custody on June 26, 2025, and that all six dogs were subjected to cruel treatment in that they were left in an enclosure in extreme heat without food or water for an extended period.

¶ 9    On August 11, 2025, defendant filed a motion for the appointment of a psychiatrist in case No. 25-CF-175. In it, she alleged that she was taken from the jail to a hospital for emergency treatment on August 8, 2025, and that as of the date of the motion, she was confined to a psychiatric hospital.[1] Defense counsel asserted that he had a *bona fide* doubt as to defendant's fitness to stand trial and requested the appointment of a psychiatrist to examine her and determine her fitness. The court entered an order that day appointing Dr. Jerry Boyd to examine defendant.

---

[1]According to a psychiatric report subsequently filed with the court, defendant required medical care after a suicide attempt.

¶ 10    Dr. Boyd filed his report with the court on September 17, 2025. He diagnosed defendant with major depressive disorder and adjustment disorder, but he found her fit to stand trial.

¶ 11    On September 18, 2025, defendant appeared for a status hearing by Zoom, and the court noted that her location was unknown. The State requested a bench warrant for her arrest, which the court granted. The following day, officers arrested defendant pursuant to that warrant. She resisted arrest, leading to a charge of resisting a police officer in case No. 25-CM-172.

¶ 12    On September 22, 2025, the State filed a petition to revoke pretrial release, identifying both case Nos. 25-CF-175 and 25-CF-177.[2] In the petition, the State alleged that while defendant was on pretrial release in these matters, she was charged with two additional offenses: escape (a Class 3 felony) in case No. 25-CF-270 and resisting a police officer (a Class A misdemeanor) in case No. 25-CM-172. The State further alleged that no condition or combination of conditions would reasonably ensure defendant's appearance at future hearings or prevent her from being charged with a subsequent felony or Class A misdemeanor.

¶ 13    On the same date, the court held a hearing on the State's petition to revoke pretrial release in these two cases along with a petition to deny pretrial release in case No. 25-CF-270. The State first presented a factual basis underlying the charge of escape at issue in case No. 25-CF-270, indicating that the administrator of the Effingham County jail would testify to the following: On August 8, 2025, defendant was transported to St. Anthony Memorial Hospital after being granted a medical furlough. After receiving treatment at St. Anthony's, she was transferred to Carle Hospital in Peoria. On August 14, someone from Carle contacted the Effingham County jail to notify jail personnel that defendant was being discharged from the hospital that day. The caller

[2]Although the petition identifies both cases, it only appears in the case file for case No. 25-CF-177.

indicated that hospital staff also advised defendant that she was to report to the Effingham County jail immediately, and they arranged transportation to get her there. The State explained, however, that defendant did not return to jail and she also did not contact jail staff.

¶ 14    The State next proffered the factual basis for the charge of resisting a police officer at issue in case No. 25-CM-172. Deputy Halsey would testify that when officers attempted to arrest defendant pursuant to a warrant on September 19, 2025, they had to kick in the locked door to a bedroom because defendant refused to open it. Deputy Halsey would further testify that when he and Deputy Loy attempted to handcuff defendant, she "continuously tried to pull her arms away" and told them she could not return to jail.

¶ 15    In its argument, the State first addressed the petition to deny pretrial release in case No. 25-CF-270, arguing that the proof was evident and the presumption great that defendant committed a Class 3 felony in that case. The State further argued that there was a risk of willful flight and that no conditions of pretrial release would prevent defendant from trying to flee based upon her failure to return from her medical furlough and her statements to Deputies Halsey and Loy. The State next addressed the petition to revoke pretrial release in case Nos. 25-CF-175 and 25-CF-177, emphasizing that defendant committed two additional offenses while on pretrial release in these cases—the Class 3 felony of escape and the Class A misdemeanor of resisting a police officer. The State argued that no conditions of release would prevent her from committing further Class A or higher offenses.

¶ 16    In response, defense counsel first argued that the motions in all three cases were moot because defendant was still detained in an earlier case (No. 24-CF-121). Defense counsel acknowledged that defendant could potentially be released if the court granted a pending motion to suppress evidence in that case but argued that the State could file any motions for detention in

5

the future if that occurred. Defense counsel urged the court to deny the State's motions on the basis of mootness.

¶ 17 Next, defense counsel addressed the circumstances of defendant's failure to return from her medical furlough, explaining that when she was discharged from the hospital, she was "a bit confused about—everything that's going on." She argued that she tried to comply. Defense counsel did not address the availability of any conditions of pretrial release, noting that it was unnecessary to do so because she would remain detained in case No. 24-CF-121 regardless of the court's ruling.

¶ 18 In ruling on the State's petition to deny pretrial release in case No. 25-CF-270, the circuit court found that the proof was evident and the presumption great that defendant committed the offense of escape. Based on defendant's failure to appear after her furlough, the court further found that no set of conditions it could impose would prevent her from failing to appear for future hearings.

¶ 19 Addressing the petition to revoke release in case Nos. 25-CF-175 and 25-CF-177, the court first noted that the terms of defendant's pretrial release in these cases included requirements that she appear for court hearings and refrain from violating the law. The court found that the State provided clear and convincing evidence that defendant violated these terms by committing new offenses in case Nos. 25-CF-270 and 25-CM-172. The court further found that no condition or set of conditions of release would prevent her from committing additional crimes.

¶ 20 The court entered written orders that day revoking defendant's pretrial release in both cases. The court expressly found by clear and convincing evidence "for reasons stated on the record" that no condition or combination of conditions of release would reasonably ensure defendant's appearance at hearings or prevent her from committing additional offenses. In docket

6

entries, the court stated that defendant "presents as a flight risk given her failure to appear to serve the sentence."

¶ 21 The court next addressed the issue of pretrial detention on October 2, 2025, during a scheduled hearing on a motion to suppress evidence in case No. 24-CF-121. The State conceded "that the motion is well taken." However, the State did not intend to *nolle prosequi* the case at that time, explaining that one of the two charges pending in that case "would actually be potentially unaffected by the motion to suppress."[3] The State further noted that at the time of the hearing, defendant was detained on charges in multiple cases.

¶ 22 Defense counsel indicated that he was working on a written motion for relief but explained that it was taking some time due to the complicated procedural history of defendant's pending cases. He informed the court that while receiving treatment for the injuries she sustained in jail, defendant had been diagnosed with cranial aneurysms, and she had a surgical consultation for this condition scheduled in Champaign on October 9. Counsel asked that the court grant defendant pretrial release to allow her to deal with her medical condition. He further stated as follows: "If the Court is not prepared to do that for today, I would ask for a setting for the written motion that I intend to file in the next couple of days/early next week."

¶ 23 The court asked the State's position on two possible options: (1) placing defendant on pretrial release with conditions, or (2) giving her a furlough for her October 9 appointment, possibly with GPS monitoring. The State objected to both options.

¶ 24 In support of its objection, the State asserted that defendant was facing several sentences with a minimum of 20 years in each case and argued that defendant demonstrated she was

---

[3]The charges at issue case No. 24-CF-121 were possession of methamphetamine and resisting a police officer. The State contended that the latter charge would not be impacted by an order granting defendant's motion to suppress.

incapable of refraining from committing Class A misdemeanors or higher offenses. The State emphasized that defendant did not return from her previous medical furlough, and noted that under the County Jail Act, jail personnel were required to transport her to any necessary medical appointments.

¶ 25    Defendant argued in response that because she was never subject to GPS monitoring or other conditions of pretrial release previously, her response to such conditions was unknown. In addition, she asserted that she was afraid the stress of remaining in jail would aggravate her medical condition, possibly leading to her death.

¶ 26    In ruling from the bench, the court noted that defendant did not return from the furlough she was previously granted and that the court had already found probable cause on charges of "numerous felonies." The court therefore found that defendant was a flight risk. The court stated, "I don't think there's a less restrictive alternative short of detention." In addition, the court found that, due to the lengthy sentences defendant faced, "the incentive to run would be great." The court thus denied defendant's request for release.

¶ 27    The court entered continuing detention orders in both cases that day. In docket entries, the court ordered the Sheriff's Department to take defendant to her October 9, 2025, medical appointment.

¶ 28    On October 6, 2025, defendant filed motions for relief pursuant to Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024). In the motion filed in case No. 25-CF-175, she alleged that she was arrested on January 27, 2025, without charges. In both motions, defendant alleged that she first appeared before the court on these charges on June 30, 2025, at which time the issue of pretrial detention "was not addressed directly," although pretrial release in case No. 24-CF-121 was revoked over her objection. Defendant further alleged that while hospitalized for injuries sustained

8

in jail, a scan of her cervical spine revealed the presence of brain aneurysms, a serious and potentially life-threatening condition for which she had an October 9, 2025, appointment to consult with a brain surgeon. Finally, defendant asserted that she had substantial ties to the community; she had no prior convictions for a felony or violent crime;[4] and she was never previously subject to any order explicitly imposing conditions of pretrial release.

¶ 29   The circuit court held a hearing on defendant's motions for relief that day. At the hearing, the court also considered motions for relief filed in case Nos. 25-CF-121 and 25-CF-270. Asked if he had any proffers, defense counsel replied, "Just to say, Judge, that Ms. Lindemann did not intentionally escape from jail. She is—received very startling and grave health news while she was hospitalized."

¶ 30   The State proffered additional facts concerning the events of August 14, 2025, noting that when defendant was discharged from the hospital that day, hospital staff called the Effingham County Sheriff's Department to inform them of defendant's release. The caller indicated that hospital staff provided defendant with a cab, gave her cab fare, told her she was required to return to the jail, and gave the cab driver the address of the jail. The State argued that, in light of these facts, defendant's failure to return to jail indicated that "she had to have intentionally told the cab driver not to go to the jail, and to change the destination that he was given."

¶ 31   The State emphasized that defendant was facing numerous charges. The State proffered additional facts concerning two of the charges at issue in case No. 25-CF-177. Specifically, with respect to the theft charge, the State indicated that the estimated value of the stolen dolls was $60,000. As to the charge of cruel treatment of animals, the State asserted that defendant's dogs

[4]A pretrial investigation report filed in case No. 25-CF-270 indicates that defendant did in fact have two felony convictions for theft and possession of methamphetamine in February 2024.

were all "extremely underweight" with sores all over their bodies, including near their eyes. In addition, they were found in a pen covered in feces. In conclusion, the State argued that no conditions of release would prevent defendant from committing additional felonies or Class A misdemeanors.

¶ 32 In ruling from the bench, the court noted that its primary concern was defendant's failure to return to jail following her medical furlough even though she knew she was required to do so. In addition, the court emphasized that defendant was facing a possible sentence of between 18 and 80 years on the most serious of the pending charges (methamphetamine trafficking), giving her "every incentive to not come back to court and face that charge.". The court further noted that defendant committed an additional offense. The court stated, "So I think both sections apply, not likely to appear, and she will likely commit further Class A or greater offenses while this case— while all these cases continue to wind its way through the system." Finding that less restrictive alternatives to continued detention did not exist, the court denied defendant's request for release.

¶ 33 The court entered a written order for continued detention the same day. On October 10, 2025, defendant filed timely notices of appeal pursuant to Illinois Supreme Court Rule 604(h)(1)(iii) (eff. Apr. 15, 2024).

¶ 34                                    II. ANALYSIS

¶ 35 On appeal, defendant filed a notice in lieu of memorandum in each appeal. As such, her motions for relief serve as her argument on appeal. Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024).

¶ 36 All criminal defendants are presumptively eligible for pretrial release, even those charged with violent offenses. *People v. Lopez*, 2025 IL App (2d) 240709, ¶ 20; see also 725 ILCS 5/110-2(a) (West 2024). Pretrial release may only be denied "in certain statutorily limited situations." *Lopez*, 2025 IL App (2d) 240709, ¶ 15 (citing 725 ILCS 5/110-6.1(e) (West 2022)). The circuit

court may deny pretrial release if the State proves by clear and convincing evidence that (1) the proof is evident or the presumption great that defendant committed a detainable offense, (2) defendant poses either a flight risk or a real and present threat to the safety of any person or the community, and (3) conditions of pretrial release would not prevent defendant's willful flight from prosecution and/or mitigate the threat. *People v. Horne*, 2023 IL App (2d) 230382, ¶ 16.

¶ 37    After a defendant has been granted pretrial release, the circuit court may revoke release if defendant is charged with a felony or a Class A misdemeanor based on conduct alleged to have occurred while defendant was on pretrial release. *People v. Davis*, 2024 IL App (5th) 240120, ¶ 14 (citing 725 ILCS 5/110-6(a) (West 2022)). Although the court may consider revocation either *sua sponte* or upon verified petition filed by the State, the court must hold a hearing at which the State bears the burden of proving by clear and convincing evidence that no condition or combination of conditions of release will reasonably ensure that defendant will appear for future hearings and/or will not commit subsequent felonies or Class A misdemeanors. *Id.* (citing 725 ILCS 5/110-6(a) (West 2022)).

¶ 38    Our standard of review on appeal depends on the nature of the evidence presented at the hearing. Where the parties present the testimony of live witnesses, we review the circuit court's decision to determine whether it is against the manifest weight of the evidence. *People v. Morgan*, 2025 IL 130626, ¶ 54. However, where the parties proceed by proffer, as they did in this case, the appellate court "stands in the same position as the circuit court and may therefore conduct its own independent review of the proffered evidence and evidence otherwise documentary in nature." *Id.* ¶ 51. Our review is thus *de novo*. *Id.* ¶ 54; see also *People v. Rios*, 2025 IL App (1st) 250950, ¶ 25 (applying this standard of review to an appeal from a decision to revoke pretrial release). This

11

means we conduct the same analysis the circuit court would conduct, and we are not bound by its findings. *Lopez*, 2025 IL App (2d) 240709, ¶ 18.

¶ 39 Here, there is no question that defendant was charged with an additional felony and Class A misdemeanor based on conduct alleged to have occurred while she was on pretrial release in these cases. She was charged with escape, a Class 3 felony, based on her August 14, 2025, failure to return to jail after her medical furlough. She was then charged with resisting a police officer, a Class A misdemeanor, based on her efforts to avoid arrest on September 19, 2025.

¶ 40 Likewise, ample evidence supports the circuit court's finding that no set of conditions would be likely to prevent defendant from committing additional offenses or failing to appear. Defendant was on pretrial release when she committed the offenses at issue in this case, thus demonstrating that she has a history of failing to abide by the conditions of pretrial release.

¶ 41 In addition, as the circuit court observed, defendant faced a potential sentence of up to 80 years on the most serious pending charge, giving her a strong motive to avoid prosecution. The record contains evidence of several attempts to act in accordance with that motive. For example, defendant failed to appear in person for a September 18, 2025, hearing and apparently refused to divulge her location at that time. That conduct, along with the conduct underlying the charges of escape and resisting a police officer, all of which occurred while defendant was on pretrial release in multiple cases, demonstrate that conditions of release are unlikely to prevent defendant's willful flight from prosecution. We find no error in the court's decision to revoke her pretrial release.

¶ 42                                          III. CONCLUSION

¶ 43 For the foregoing reasons, we affirm the orders of the circuit court revoking defendant's pretrial release and denying her motions for relief.

¶ 44    Affirmed.